PENN REFINING COMPANY, LIMITED, *v.* WESTERN NEW YORK AND PENNSYLVANIA RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 27.   Argued October 18, 21, 1907.—Decided January 27, 1908.

An order of the Interstate Commerce Commission, that carriers not charging for tanks on tank-oil shipments desist from charging for the barrel on barrel shipments, or else furnish tank cars to all shippers applying therefor, *held*, in this case, to be equivalent to a holding that the charge for the barrel, is not in itself excessive, and therefore, also *held*, that barrel-oil shippers who had not demanded tank cars had not been discriminated against, and were not entitled to reparation for the amounts paid by them on the barrels.

It is the duty of a connecting carrier on a joint through rate to accept the cars delivered to it by the initial carrier, and it is not thereby rendered liable for any wrongful discrimination of the initial carrier merely because of the adoption of a joint through rate, which in itself is reasonable; nor is such connecting carrier rendered liable for any such wrongful act of the initial carrier by section eight of the Interstate Commerce Act.

137 Fed. Rep. 343, affirmed.

THE plaintiff in error, who was plaintiff below, seeks to review a judgment of the Circuit Court of Appeals for the Third Circuit, 137 Fed. Rep. 343, reversing absolutely and without allowing a writ of *"venire facias de novo,"* the judgment of the Circuit Court of the United States for the Western District

of Pennsylvania in favor of the plaintiff company for $8,579, with interest from May 15, 1894; in all, $12,706.92. This sum was made up of the charge of fourteen cents for the weight of the barrel in which oil was transported to Perth Amboy from the Pennsylvania oil fields, from September 3, 1888, the time when such charge commenced, to May 15, 1894, the time when the hearing on the claims was had before the Interstate Commerce Commission.

The proceeding resulting in the petition herein to the Circuit Court was originally commenced before the Interstate Commerce Commission, and thereafter conducted pursuant to §§ 13–16 of the act creating the Commission, February 4, 1887, c. 104, 24 Stat. 379, 384, as amended by the act of March 2, 1889, c. 382, 25 Stat. 855, 859; 3 Comp. Stat. 3165, to obtain relief from certain alleged illegal practices of the railroad companies in the way of overcharges for the transportation of oil for the complainants in the petition, and to obtain reparation therefor.

Three substantially contemporaneous yet also separate petitions were filed with the Commission, two on the fourth of December, 1888, and one on the thirtieth of January, 1889, by the Independent Refiners' Association of Titusville, Pennsylvania, and the Independent Refiners' Association of Oil City, Pennsylvania, against several railroad companies.

The petitioners were associations of some sixteen separate refining companies, operating distinct and separate works in the oil regions of Pennsylvania, near the city of Titusville or Oil City.

The petitions were filed for the purpose of obtaining relief from certain charges made by the defendant companies against the petitioners for the transportation of their oil from those oil fields to tidewater in New Jersey, and specially to Perth Amboy in that State, and described as a point in New York harbor, and also to Boston and points in that vicinity. Their petition relating to the charges for transportation to Perth Amboy is alone involved here.

The ground of complaint in that petition was that the railroads who were therein made defendants, viz., the Western New York and Pennsylvania, and the Lehigh Valley, charged sixty-six cents per barrel of oil, which was alleged to be an excessive, unjust and unreasonably high rate for the transportation of oil to Perth Amboy.

There was no complaint in the petition of the failure of defendants to furnish tank cars for the petitioners for the transportation of their oil to Perth Amboy. There was no averment of unfairness of the rates as between barrel and tank oil. Nor was there any averment that the defendants, by their custom of charging for the gross weight of the oil and barrels, were giving a preferential rate to the tank shippers as against the barrel shipments made by plaintiffs. It was only alleged that the rate for the transportation of oil to Perth Amboy was unreasonably high at sixty-six cents per barrel, the weight of the barrel being included and charged for therein. The averments in the petition, that plaintiffs were subjected to undue prejudice and that an undue advantage was given their competitors in business, among others the Standard Oil Trust, had no relation to discrimination arising from a charge for the weight of the barrel, but was connected with the averment that the charge of sixty-six cents for the carriage of the oil was excessive, and hence worked a disadvantage to the plaintiffs and gave an unreasonable preference to the competitors in plaintiffs' business.

The prayer of the petition was that the Commission direct the defendants to cease their unlawful acts, etc.

The evidence was taken before the Commission in the three cases, with the understanding it should be applied to each or all the cases, so far as applicable therein.

It appears by the evidence before the Commission that the charge of fourteen cents per barrel (in addition to fifty-two cents for its contents) for the transportation thereof to Perth Amboy commenced about September, 1888, and prior to that the charge had been fifty-two cents for the oil and the barrel.

There had been some reasons alleged on account of which the charge had been limited to the total of fifty-two cents before September, 1888. Perth Amboy was the station to which all the petitioners in the proceedings before the Commission, applicable to that port, had consigned their oil for export, and that station had no conveniences for unloading in bulk the oil which was brought there in tank cars. Not one car in a hundred was a tank car. The trade demand at that point was for oil in barrels, and the ocean shipments therefrom by the petitioners were also made in barrels, as there were no vessels from that port carrying oil in bulk. Some of the petitioners in the proceedings before the Commission owned tank cars, but did not use them for the Perth Amboy port for the above reasons. Oil which came to Perth Amboy, intended for export, if it arrived in tank cars, had to be there unloaded and filled in barrels before it could be loaded on ships. The petitioners, including the plaintiffs, therefore, had no use for tank cars to that point. The Lehigh Valley Road did not own tank cars, nor did any of the other railroad companies to any material extent, except the Pennsylvania Railroad, which is not a party to this proceeding. The charges for transportation of oil in tank cars did not include any charge except for the oil. In the transportation of the oil to Perth Amboy *via* Buffalo, the initial carrier was the Western New York and Pennsylvania Railroad Company, the Lehigh Valley Railroad Company taking the oil as delivered to them in barrels in cars at Buffalo, New York, and transporting it to Perth Amboy, the plaintiffs paying therefor a joint through rate, amounting to sixty-six cents per barrel, including the barrel. The defendants had established this joint through rate. The tank cars that were used by others for transportation to other places than Perth Amboy were rented from the owners, who were also shippers of the oil, to the railroad companies, who paid the owners for the use of such tank cars a certain sum, determined by the miles run. Those cars were used exclusively for the transportation of the oil of the owners of the cars.

The Commission ordered the defendants to cease and desist from charging or collecting any rate or sum for the transportation of the barrel package on shipments of oil in barrels over their respective roads or lines from the oil regions of western Pennsylvania to New York and New York harbor points, or, on reasonable notice, promptly furnish tank cars to complainants and others who may apply therefor for the purpose of loading and shipping oil therein to such New York harbor points as the shipper may direct; and that said defendants notify the public accordingly by publication in their tariff of rates and charges, pursuant to the provisions of § 6 of the act to regulate commerce. It was also ordered that the rate on shipments of oil, both in tanks and in barrels, over said roads should be the same, and the said rate from said oil regions to New York points should not exceed sixteen and one-half cents per hundred pounds. The defendants were also required "to refund to the several parties legally entitled thereto, within sixty days after notice of this decision and demand thereof by such parties, all sums received by them for transportation over their roads of the barrel package, on shipments of oil in barrels, *when the use of tank cars had not been open to shippers impartially, and the shipper claiming reparation has been thereby deprived of their use.*"

In its opinion, covering, so far as applicable, the three cases, the Commission said that the unlawful discrimination regarding the charge of fourteen cents for the barrel package, in addition to the fifty-two cents for the carriage of the oil per barrel, as against fifty-two cents per barrel by tank cars, without any charge for the package, lay in the fact that the choice was not open generally to shippers, and that the case was one where both modes of transportation are employed by the carrier and the use of one, the tank cars, is not open to shippers impartially, but is practically limited to one class of shippers, and that the charge for the barrel package in barrel shipments, in the absence of a corresponding charge on tank shipments, resulted in a greater cost of transportation to the

shipper in barrels on like quantities of oil between like points of shipment and destination than to the tank shipper, and that it was an unjust discrimination, subjecting the barrel shipper to an unreasonable disadvantage and giving the tank shipper an undue advantage, and that no circumstances and conditions had been disclosed by the evidence in these cases authorizing such discrimination by any of the defendant carriers.

The order of the Commission was filed November 14, 1892, and the proceedings were kept open for the purpose of ascertaining the amounts which were due the parties plaintiff on the theory adopted by the Commission.

The defendants did not comply with the order, but continued to charge the fourteen cents for the barrel, and the parties seeking reparation—that is, the recovery of the damage which they alleged they had sustained—applied for a hearing before the Commission to ascertain the amount thereof. The Commission proceeded thereafter, on proper notice, to determine the amounts due each of the claimants from September 13, 1888, the time of the commencement of the charge for the barrel transportation, to May 15, 1894, the time of the hearing before the Commission, and found (October 22, 1895) the amount due the plaintiff, the Penn Refining Company, Limited (among many other claimants), to be the amount already stated, arising, as found, from the transportation of barrels containing petroleum oil, shipped and carried by the railroads from Oil City and Titusville to Perth Amboy at fourteen cents per barrel in addition to fifty-two cents for its contents.

The Commission, in its reparation opinion, stated that the carriers had failed to notify the public, by publication in their tariffs of rates and charges, that they would, on reasonable notice, supply shippers who might apply therefor with tank cars for transportation to New York harbor points. The original order, directing the publication of these notices by defendants in their tariffs of rates, was entered November 14,

1892, while the period covered by the reparation order of October, 1895, giving damages, included four years, namely, from September, 1888, to November, 1892, before the making of such order. The Commission in its opinion also stated that tank cars had not been open to the use of shippers generally on the carriers' roads, but there was no statement or finding that plaintiffs had ever applied for such cars or desired them or had been refused. The companies did not comply with the order of reparation, and the Commission then commenced (some time in 1896) a proceeding in its own name in the Circuit Court of the United States, in equity, to enforce all the directions contained in the orders, including the provision for the payment of the money damages found due the various claimants. Upon demurrer that court held that the latter provision could not be enforced in equity, as the railroads were entitled to a jury trial on the issue as to the amount of the money recovery, and that the order in regard to the amount due ought to be enforced by each plaintiff in his own name. *The Interstate Commerce Commission* v. *Western New York & Pennsylvania R. R. Co.*, 82 Fed. Rep. 192, 195.

Thereupon, and in April, 1901, this proceeding by petition was commenced in the United States Circuit Court for the Western District of Pennsylvania by the Penn Refining Company, Limited, to recover the amount of the money reparation directed by the Commission. The Lehigh Valley Company demurred to the petition, which was overruled, and issue was then joined by all the defendants upon the material allegations of the petition, and the case was tried in March, 1902, and a verdict found for the plaintiffs against all the defendants.

*Mr. James W. Lee* and *Mr. Samuel S. Mehard*, with whom *Mr. Eugene Mackey* and *Mr. M. J. Heyward* were on the brief, for plaintiff in error.

*Mr. John G. Johnson*, with whom *Mr. Francis I. Gowen* was on the brief, for defendants in error.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The questions arising on this writ of error are, in some respects, different in regard to the different railroads who are defendants in error, but as to the matters now to be discussed all occupy the same position.

In their petition to the Commission the petitioners in that proceeding complained of the rate of transportation of oil to Perth Amboy, fixed by the carriers at sixty-six cents per barrel, the weight of the barrel being included and charged for in that amount, which rate, it was asserted, was unreasonable and excessive.

In the opinion of the Commission, filed with its order, in referring to a former charge of fifty-two cents per barrel of oil without charging for the weight of the barrel, from the oil fields to Perth Amboy, it is said: "While this rate is fully as high as it should be in view of the nature of the traffic and the conditions surrounding it, and might possibly be made less without depriving the carriers of a fair remuneration for their service, we do not feel authorized under all the facts and circumstances disclosed by the record and evidence in these cases to order a reduction in addition to the exclusion of the charge for the barrel package " (fourteen cents); " and our conclusion is that the rate to New York points should be not more than 16½ cents per hundred pounds, both in tank and barrel shipments, to be charged, in both cases, only for the weight or quantity of oil carried, exclusive of any charge for the package." Again the Commission, in its opinion, said: "In order to guard against misapprehension the Commission wishes to say that these cases are decided purely upon the facts as set forth in the situation as delineated in the record and by the evidence. It is not intended to hold, nor should this report be construed to hold, that, aside from other controlling circumstances, the carrier, in hauling packages, is not entitled to pay according to the weight thereof. It is simply held that

on account of the peculiar circumstances in these cases to charge for the weight of the barrel places barrel shippers at a disadvantage as against tank shippers, and the practice in these cases, while the circumstances and conditions remain unchanged, should be condemned." Upon referring to the order actually made by the Commission, its language is "that the action of the defendants in charging for the weight of barrels on shipments of refined oil in barrels over the several through lines formed by their respective railroads from Titusville, Oil City, and other points in the oil regions of western Pennsylvania, to New York, and other points in New York harbor, or to Boston and points called and known as Boston points, works unjust discrimination against the shipper of such oil in barrels in favor of shippers of the same commodity in tank cars, while said defendants refuse or neglect to furnish tank cars to complainants and other shippers for the purpose of loading and shipping oil therein to such New York harbor and Boston points as said shippers may direct; that rates per hundred pounds on shipments of oil in tanks or in barrels should be the same, and from said points in the oil regions of western Pennsylvania to New York harbor and Boston points such rates should not exceed 16½ cents and 23½ cents respectively, and that defendants should make reparation to complainants and others in all cases where charges on shipment in barrels between those points have included a charge for the weight of the barrel, and tank cars have not been open impartially to shippers of refined petroleum oil over their lines."

The defendants were also, by order of the Commission, "required to wholly cease and desist from charging or collecting any rate or sum for the transportation of the barrel package on shipments of oil in barrels over their respective roads or lines from the oil regions of western Pennsylvania to New York and New York harbor points, or to Boston and Boston points, or, on reasonable notice, promptly furnish tank cars to complainants and other shippers who may apply therefor for

the purpose of loading and shipping oil therein to such New York harbor and Boston points as said shippers may direct, and that on or before the ninth of January, 1893, said defendants notify the public accordingly by publication in their tariffs of rates and charges, pursuant to the provisions of § 6 of the act to regulate commerce, and also file copies of said tariffs with this Commission, as required by the provisions of said section; and defendants are further hereby directed and required to refund to the several parties legally entitled thereto, within sixty days," etc., as set forth in the order.

By reference to the foregoing extracts from the opinion of the Commission it appears that they did not hold that the carrier in hauling barrels of oil was not entitled to pay for the weight thereof, including the package, but only that the peculiar circumstances of the case before it made it improper to charge for the weight of the barrel, because by such charge the shippers of oil in barrels were placed at a disadvantage as against shippers by tank cars, and although in one portion of the opinion it is stated that the charge of fifty-two cents per barrel, excluding the weight of the barrel package, was as high as it should be in view of the nature of the traffic and the conditions surrounding it, nevertheless the Commission gave the above quoted precise directions contained in its formal order. It made use of language by which the defendants were required to cease from charging for the transportation of the barrel package, *or*, on reasonable notice promptly furnish tank cars to complainant and other shippers who might apply therefor for the purpose of loading and shipping oil to New York harbor or Boston points, as the shippers might direct. This, of course, amounted and was equivalent to a holding that the charge for the weight of the barrel package of oil was not excessive. If the charge for the carriage of the barrel itself, taken in connection with the charge for the weight of the oil contained therein, made a total charge which was in and of itself excessive or unreasonably high (as was the complaint of the petitioners), of course the Commission would not

have permitted the charge, even if the petitioners had not applied for the use of tank cars. *East Tennessee &c. Railway Co.* v. *Interstate Commerce Commission*, 181 U. S. 1, 23; *Interstate Commerce Commission* v. *Louisville & Nashville R. R. Co.*, 190 U. S. 273, 283. This limits the case against the defendants upon the finding of the Commission, to that of discrimination, which was decided to exist under the peculiar circumstances of the case, by reason of the charge for the barrel in which the oil was contained, while in tank cars the charge was limited to the oil carried.

We will therefore inquire what were the peculiar circumstances, as shown by the evidence, which led the Commission to make its order as to discrimination?

They were these:

1. That the railroads owned no tank cars.

2. That they transported oil in tank cars only for those shippers of oil who owned and furnished such cars. That in the case of oil intended for export by such owners it was sent to ports in New York harbor near Perth Amboy; the seaboard, and not Perth Amboy alone, being the place of competition between the plaintiffs and the Standard Oil Trust and others.

3. That the carrier hired tank cars from the shippers of the oil and paid for them a certain sum, measured by the miles run to and from the place of consignment.

4. That the tank cars, thus hired, were used exclusively to carry the oil of the owners of such cars. Other shippers of oil had their oil carried in barrels, in box cars, and a charge was made for the weight of the barrel containing the oil, while the charge for the oil in tank cars was limited to the amount of oil actually carried.

These facts, in the opinion of the Commission, rendered the case an exception to the usual rule as to the right to charge for the weight of package as well as its contents. In the view of the Commission, although it admitted that the transportation in tank cars was more profitable to the carrier in yielding a larger revenue above the cost of service than that in barrels,

yet the case was not presented "of two modes of transportation open indiscriminately to shippers in general, the one at a higher rate than the other, and as to which the shipper may take his choice and pay accordingly, but a case where the cheaper rated and, as claimed by the defendants, the better, mode of transportation was open practically to only a particular class of shippers." When, therefore, as was stated, "the carrier accepts tank cars owned by shippers who can afford to build and furnish them, and has none of his own to furnish to other shippers, but can supply only box cars, in which barrels must be used for oil, the carrier is bound to see that he gives no preference in rates to the tank shipper, and that he subjects the barrel shipper to no disadvantage."

These facts also appeared before the Circuit Court, and that court left it to the jury to find from them whether there was "undue discrimination" in favor of the shipper by tank cars and against the shipper by barrels, although the petition made no such allegation, but only alleged that the rates and charges for the service (sixty-six cents per barrel) were excessive, unjust and unreasonable. Discrimination was not alleged between the tank and the barrel car, for what would seem to be the obvious reason that the plaintiffs could make no use of the tank cars, as they had no facilities for unloading them at Perth Amboy and no vessels to export the oil in bulk, and the trade demand there was for oil in barrels. But, although, without such facilities and not being in position, therefore, to use such cars, the plaintiffs nevertheless demanded that no charge for transportation should be made for the barrel package, although the charge made was a reasonable one, unless a charge for the tank packages was made against those who used tank cars for the carriage of their oil to points adjacent to Perth Amboy, and although the transportation by tank cars was more remunerative to the companies than the transportation by barrels.

The whole theory of this discrimination rests upon the alleged failure to furnish tank cars to shippers demanding

them, while at the same time the defendants leased tank cars from their owners and used them to carry the oil of such owners exclusively, and yet in this case there has been no such failure, because there has been no demand for such cars by the plaintiffs, who, for the reasons stated, had no use for them.

Although in the opinion of the Commission in the reparation proceeding it was stated that the defendants had not notified the public as to supplying shippers with tank cars, as required by the order of November 14, 1892, while at the same time they denied to plaintiffs the use of such cars, yet there is no statement or finding that the plaintiffs had ever asked for such cars for the Perth Amboy station, and the proof is they did not want them for that point. In the course of the opinion some general observations were made in regard to the failure to supply tank cars, and the consequent necessity for the shippers to ship their oil in barrels and pay transportation on the total weight of the oil and the barrels. The opinion was delivered in two different proceedings, in which all the facts were not identical, one regarding Perth Amboy and the other Boston and adjacent points, and we cannot suppose that the Commission meant to include Perth Amboy in the opinion on this point, because the facts already adverted to furnish ample reasons for not demanding or using tank cars.

It is, therefore, apparent that the failure of plaintiffs to use tank cars during substantially all the period covered by the reparation order was not owing to a refusal or omission of the defendants to supply them on demand, but because they, the plaintiffs, did not demand and could not use them economically for the transportation of oil to Perth Amboy. The opinion of the Commission must be read with reference to this evidence, which, although given on the trial before the court, states the facts existing at Perth Amboy during the time of investigation by the Commission.

If it be assumed that it was the duty of the railroads to furnish tank cars to those who demanded them while the

railroads continued to hire that kind of car from owners in which to carry their oil, yet the failure to furnish them to a party that did not desire and had not demanded them certainly ought not to render it necessary for the railroads to carry the barrel package free because no charge was made for the tank package. The Commission said it may be conceded that the amount of paying freight was materially greater in tank than in barrel shipments, and that the tank car, after adding the gross weight of the car and oil, pays slightly more to the carrier per ton than the stock car with its full load of oil barrels. Nevertheless it was stated that the facts already adverted to made out a case of unjust discrimination between the tank and barrel shipper, and it was so adjudged in this case where a shipper did not use or demand a tank car.

We are unable to concur in this view. Because circumstances existed which prevented the economical use of the tank car by plaintiffs (no demand being made for the use of a tank car) is no ground for finding discrimination in the charge for the weight of the barrel package (such charge being in itself not an unreasonable one), while none is made for the tank containing the oil. It might be different if plaintiffs desired tank cars and defendants failed to furnish them on demand.

If the carrier must take off such charge for the weight of the barrel, although tank cars are not demanded, the result is to make the defendants carry the barrels free from freight charges, even while the shippers were unable to use and did not demand tank cars.

It is not incumbent, therefore, upon this court to now decide what would be the duty of the carrier as to furnishing tank cars to those who desired and demanded but did not own them, where the railroads accepted tank cars, owned by other shippers of oil, for the purpose of carrying their oil alone, and to different points than Perth Amboy. We are dealing with a case where such question does not arise.

There are other reasons in addition to the foregoing why the Lehigh Valley should not be held for any discrimination

in this case. That company was but a connecting carrier and took the cars as they were delivered to it by the initial carrier at Buffalo for transportation to Perth Amboy. It was the duty of the connecting carrier to do so, and it was not rendered liable for any alleged wrongful act of the initial carrier merely because of the adoption of a joint through rate from Titusville or Oil City to Perth Amboy, which was in itself reasonable. Nor did the eighth section of the commerce act render it liable for any such alleged wrongful act asserted against the initial carrier.

These views render it unnecessary to consider the objection to the recovery, taken by the defendants in error, based upon the fact that the petition to the Commission asked for relief on the ground that the charges were unreasonably high, while the relief granted was based upon discrimination, a charge not contained in the pleading. For the reasons already stated, the judgment of the Circuit Court of Appeals is

*Affirmed.*

Mr. Justice Moody, dissenting.

In my opinion there was evidence which tends to support the plaintiff's cause of action, and I think that it should have been, as it was, submitted to the jury. It appeared that the plaintiff was engaged in shipping oil, destined for export, from the oil regions in Pennsylvania to Perth Amboy. Up to September, 1888, the transportation rate was fifty-two cents per barrel, and that rate applied, whether the oil was carried in barrels or in tank cars. At that rate the plaintiff was able to ship oil in competition with other producers. In September, 1888, the rate for shipment in barrels was changed to sixty-six cents per barrel, while the rate was left unchanged where the oil was carried in tank cars. The evidence tended to show that, in view of the number, ownership, and management of all the tank cars in existence, the new rate was practically prohibitory of barrel shipments from the Pennsylvania oil

regions to the seaboard, that it was designed by a competitor who influenced the defendants to impose it to have this effect, and that this was the only method of shipment practically open to the plaintiff. Under these circumstances the plaintiff joined with others in a complaint to the Interstate Commerce Commission. Section 3 of the Interstate Commerce Act of February 4, 1887, c. 104, 24 Stat. 379, makes it "unlawful . . . to subject . . . any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatever," as well as to give any person or kind of traffic an undue preference or advantage. The plaintiff might have brought an action for damages under §§ 8 and 9 of the act, but it chose to make complaint to the Commission, thereby electing that as the exclusive remedy. The Commission, after a hearing, adjudged that the sixty-six cent rate worked unjust discrimination against barrel shipments, and ordered the defendants to make reparation to the plaintiff and others. The amount of the reparation was afterwards ascertained. An order prescribing the tariff in the future was made, but its terms do not seem to be material, as the claims for reparation were for the time between the establishment of the discriminating rate and the making of the Commission's order. The order for the future may or may not be a valid and enforceable one. The plaintiff's right under that order, in the absence of a demand for tank cars, may be uncertain. We need not pursue those inquiries. Here the only question is of the right of the plaintiff to recover damages for the alleged discriminatory rate collected from it before and not after the order of the Commission. The defendants declined to make the reparation ordered by the Commission, and the plaintiff sought to recover it by an action, brought under § 17 of the act, in which the defendants were entitled to a trial by jury. On the trial the statute makes "the findings of fact *prima facie* evidence of the matters therein stated." They with other evidence were submitted to the jury. The jury was instructed that whether the plaintiff had been subjected to

undue prejudice was a question of fact. The jury was further instructed as follows:

"In arriving at that conclusion, it is proper to call your attention to this point—that the mere fact that there is or may be a preference or advantage given, where refined oil is shipped in some other way—for example, in tank cars—and that a more favorable rate is given to tank car shippers, does not, in and of itself, show that such preference or advantage is undue or unreasonable within the meaning of the act. Hence it follows that the jury, before it can adjudge these companies to have acted unlawfully, to have subjected refined oil in barrels to any undue or unreasonable prejudice or disadvantage, must ascertain the facts and must give due regard to these facts and matters which railroad men, apart from any question arising under the statute, would treat as calling for a preference or advantage to be given—for example, in this case, to oil shipped in such tanks. All such facts may and ought to be considered and given due weight by the jury in forming its judgment, whether such preference or advantage is undue or unreasonable. In the complexity of human affairs, and especially in commercial affairs, absolute uniformity is well-nigh impossible, and some prejudice or disadvantage often occurs where men desire to act with the utmost fairness. It is, however, where such prejudice or disadvantage in interstate commerce reaches the measure of undue or unreasonable that the act makes it unlawful.

"It will be for you, gentlemen, to apply to this question all the evidence before you in this case, in the light of all the facts and proofs, and justly, fairly and impartially to determine the question of whether this rate on refined oil in barrels between Oil City and Titusville and Perth Amboy, so established between these two companies (if you find that to be the fact) did subject the oil shipped in barrels to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

"If you so find, you will also determine to what extent was the rate undue and unreasonable, and whatever amount you

so find under the evidence, you would be justified in allowing
this plaintiff to recoup or recover upon any shipments it made
and on which it has paid the undue and unreasonable amount.
You will understand that it is not entitled to recover all the
freight it paid, because part of it was undue and unreasonable,
but it is only such part of the freight as you find to be undue
and unreasonable that the plaintiff is entitled to recover back,
and that only upon proof to you of the amount of the ship-
ments made by it upon which the freight was unduly and un-
reasonably charged."

These instructions seem to me full and appropriate.   The
jury found a verdict for the plaintiff, thereby affirming that
"the particular description of traffic" in which the plaintiff
was engaged was subjected to "undue or unreasonable preju-
dice or disadvantage."   I am not persuaded that we can say,
as matter of law, that there was not sufficient evidence to be
submitted to the jury and to warrant the verdict.   Nor do I
see any reason why the Lehigh Valley Railroad should not be
held responsible.   It had, with the other defendant, established
a joint tariff for a continuous shipment between the States.
That tariff has been found to be discriminatory and unlawful.
It has received its share of the unlawful exaction.   The eighth
section of the act provides that a carrier who "shall do, cause
to be done, or permit to be done, any act, matter, or thing in
this act prohibited or declared to be unlawful" shall be liable
to the full amount of the damages sustained by one injured
thereby.   I see no escape for this defendant from this provision.

There may have been error committed during the trial
which would require that the verdict should be set aside and
a new trial granted.   It is not necessary for me to consider this
question.   I go no further than to dissent from the judgment
of the court, which in effect denies the right of the plaintiff
to recover upon the evidence against any of the defendants.

I am authorized to say that MR. JUSTICE HARLAN concurs
in this dissent.