# CHARLESTON.

Kanawha Black Band Coal Company *et al. v.* The Chesapeake & Ohio Railway Company *et al.*

(No. 6431)

Submitted April 10, 1929.     Decided May 7, 1929.
(Rehearing Denied July 17, 1929.)

*D. H. Leake, C. W. Strickling* and *Fitzpatrick, Brown & Davis,* for plaintiff in error.

*Lilly & Lilly,* for defendants in error.

MAXWELL, JUDGE:

The Chesapeake & Ohio Railway Company prosecutes this writ of error to a judgment of the circuit court of Kanawha County in favor of Kanawha Black Band Coal Company and Glenn Coal Company against Kanawha Central Railway Company and Chesapeake & Ohio Railway Company predicated upon a reparation order of the Interstate Commerce Commission. The case was tried before the court in lieu of a jury.

The two coal companies are producers of coal on the line of railway of the Kanawha Central Railway Company, whose road is five miles in length, located wholly within this state, and connects with the line of the Chesapeake & Ohio Railway Company at Brounland. On the 25th day of January, 1922, the said two coal companies, together with other complainants, filed their complaint before the Interstate Commerce Commission, docket No. 13,546, against the Chesapeake & Ohio Railway Company, the Kanawha Central Railway Company and numerous other railway companies alleging that the rates on bituminous coal shipped in carload lots from the mines on the Kanawha Central in interstate commerce were unreasonable, and prayed that an investigation be made and that there be prescribed for coal originating on the Kanawha Central a joint through rate not greater than the existing rate from stations in the Kanawha District on the line of the Chesapeake & Ohio Railway and its branch lines to the same destinations. At that time, the Kanawha Central had not filed a schedule of rates with the Interstate Commerce Commission, but, pursuant to authorization of the West Virginia Public Service Commission, was charging $8.50 per car for

coal originating on its line and delivered by it to the Chesa-peake & Ohio at Brounland. After the filing of the petition aforesaid, the Kanawha Central filed with the Interstate Com-merce Commission a tariff effective June 23, 1922, naming a proportional interstate rate of forty cents per long ton on coal from mines on its line to Brounland. Both the said two coal companies and the Chesapeake & Ohio Railway Company promptly protested against said rate, but the Interstate Com-merce Commission overruled the protests, and permitted the said new rate to remain in effect pending the hearing of the case then before it. The charge or rate of the Kanawha Central Railway Company of $8.50 per car, and later, of forty cents per gross ton, for transportation of coal from the mines to Brounland, was not participated in by the Chesapeake & Ohio Railway Company. This charge was paid by the coal companies to the Kanawha Central and retained by it. Nor did the Kanawha Central participate in the Kanawha District rate which was applied by the Chesapeake & Ohio to the tonnage from Brounland to destination. On the 30th day of March, 1923, the Interstate Commerce Commission made its finding "that the combination rates in effect on coal from mines on the Kanawha Central to interstate destination on the lines of the defendants, other than the Kanawha Central, are, and for the future will be, unreasonable and unduly prejudicial to the extent that they exceed or may exceed the group rate contemporaneously maintained on like traffic from other mines in the Kanawha District served by the Chesapeake & Ohio to the same destinations." By order entered contempora-neously, the Commission required that the railroad companies "cease and desist, on or before July 13, 1923, and thereafter to abstain from publishing, demanding or collecting for the transportation of coal, in carloads, from mines on the Kana-wha Central Railway to interstate destinations on the lines of said defendants other than the Kanawha Central Railway, rates which exceed those prescribed" by the Commission. The opinion of the Commission is reported in 78 I. C. C. at page 429.

In June, 1924, the said two coal companies filed a further complaint against the transportation companies, docket No.

16,160, before the Interstate Commerce Commission, claiming reparation for the period elapsing between June 23, 1922, and July 13, 1923, to the extent that the transportation charges they were required to pay exceeded the district rate plus $8.50 per car. It was alleged that the excessive charge amounted to about 23 cents per gross ton. On the 16th day of April, 1925, the Interstate Commerce Commission rendered an opinion (98 I. C. C. 431) sustaining the contention of the complainants and declaring "that the through rate on coal, in carloads, from complainants' mines on the Kanawha Central to interstate destinations on the lines of the other defendants between June 24, 1922, and July 13, 1923, were unreasonable to the extent that they exceeded the district rate contemporaneously applicable from Brounland to the same destination plus $8.50 per car." The Commission required further proof to be furnished by the petitioners as to the respective amounts of coal shipped by them during the period of time above mentioned. Upon the incoming of the further proof as required, the Commission ascertained the tonnage that had been shipped by the petitioners, respectively, during said period, and entered an order December 2, 1927, directing and requiring the Kanawha Central Railway Company and the Chesapeake & Ohio Railway Company to pay to Kanawha Black Band Coal Company the sum of $3,728.74 with interest from March 1, 1923, and to Glenn Coal Company, the sum of $5,775.73 with interest from said date, both requirements being "as reparation on account of unreasonable rates charged for the transportation of numerous carloads of coal from mines on the Kanawha Central Railway to interstate destinations." The railway companies having declined to discharge said reparation requirement, this suit followed with the result hereinabove first noted.

By a supplemental order of June 8, 1928, induced by cross-petition of Kanawha Central respecting equitable division for the Kanawha Central out of the Kanawha District rate, which rate, under order of the Commission, had been made effective July 13, 1923, as to interstate shipments originating on the Kanawha Central, the Commission found that of such joint

through rate the Kanawha Central should receive 29 cents per long ton.

Sub-section 2 of section 16 of the Interstate Commerce Act, (U. S. C. Title 49, chapter 1), authorizes suits of this sort in either the state or federal courts on reparation orders of the Interstate Commerce Commission, and provides that such suit "shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the finding and order of the Commission shall be *prima facie* evidence of the facts therein stated, * * *." Sub-section 4 of said paragraph permits all parties in whose favor the Commission may have made an award for damages by single order to be joined as plaintiffs, and all of the carriers parties to such order awarding such damages to be joined as defendants, and authorizes such suit to be maintained by such joint plaintiffs against such joint defendants.

Prior to its promulgation of the forty cent rate, June 23, 1922, as already noted, the Kanawha Central had established no tariff for interstate shipments, nor had any rate been fixed for it by the Interstate Commerce Commission; nor had there been established by agreement of the carriers or by order of the Commission a joint interstate rate for the Kanawha Central and other roads for tonnage originating on the Kanawha Central.

It is urged by the defendant in error that the finding of the Interstate Commerce Commission fixing reparation against both the Kanawha Central and the Chesapeake & Ohio in favor of the defendants in error is *prima facie* correct, and that in this Court, just as in the trial court, full force should be given to the reparation order of the Commission. We, of course, recognize that findings of the Interstate Commerce Commission on matters of rate are entitled to great weight and most careful consideration in all other tribunals, but we do not understand that in matters of reparation the findings of the Commission must necessarily be followed by the courts in suits predicated on such findings. It is quite true, as pointed out by counsel for defendants in error, that many cases can be found in which reparation orders of the Interstate Commerce Commission have been effectuated in judgments of the

courts, but such results do not necessarily follow, and ought not to follow unless the court is satisfied from the record that the finding of the Commission in its foundation of law and fact is sound. Under the congressional act above referred to, the findings of the Commission are *prima facie* evidence of the facts therein stated, but it is to be noted that the act does not create a similar presumption of correctness as to the Commission's judgments of law. Distinction must be recognized between orders of the Interstate Commerce Commission fixing rates, and orders allowing reparation. The former are quasi-legislative acts and the latter are quasi-judicial acts. "That the two subjects of Reparation and Rates may be dealt with in one order is undoubtedly true. * * * But awarding reparation for the past and fixing rates for the future involve the determination of matters essentially different. One is in its nature private and the other public. One is made by the Commission in its quasi-judicial capacity to measure past injuries sustained by a private shipper; the other, in its quasi-legislative capacity, to prevent future injury to the public." *Baer Bros.* v. *Denver & Rio Grande Railroad Company,* 233 U. S. 479. In cases involving orders of the Commission entered in pursuance of its quasi-legislative or administrative functions dealing with matters of rates, operation or management of public carriers, for the public welfare, the courts will not inquire into the Commission's findings of fact on conflicting testimony. *Interstate Commerce Commission* v. *Delaware, L. & W. R. R.,* 220 U. S. 235; *Interstate Commerce Commission* v. *L. & N. R. R.,* 227 U. S. 88; *Seaboard Line* v. *U. S.,* 254 U. S. 57; *Virginian Ry.* v. *U. S.,* 272 U. S. 658. But in matters of reparation requiring payment of money, the findings of the Commission are under the congressional act only *prima facie* evidence of the correctness of the facts therein found. *Meeker* v. *Lehigh Valley R. R.,* 236 U. S. 412; *Mills* v. *Lehigh Valley R. R.,* 238 U. S. 473; *Krauss Bros.* v. *Mellon,* 18 F. (2nd) 369; *Williamette Iron & Steel* v. *B. & O. R. R.,* 25 F. (2nd) 521; *Penn. R. R.* v. *Jacoby,* 242 U. S. 89; *Penn. R. R.* v. *Weber,* 257 U. S. 85; Watkins on Shippers, (2nd Ed.), sec. 317. And as to the matters of law involved in such orders there is no presumption of correctness other than such

presumption as is naturally and cheerfully accorded to the findings of a great tribunal.

In the above case of *Meeker* v. *Lehigh Valley*, the court, in speaking of the above mentioned provision of the statute, that findings of the Commission shall be *prima facie* evidence of the facts therein stated, says: "This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most therefore it is merely a rule of evidence. It does not abridge the right of trial by jury or take away any of its incidents. Nor does it in any wise work a denial of due process of law. In principle it is not unlike the statutes in many of the States whereby tax deeds are made *prima facie* evidence of the regularity of all the proceedings upon which their validity depends." In the case of *Spiller* v. *Atchison T. & S. F. Ry. Co.*, 253 U. S. 117, it is stated that a reparation order of the Commission "has at most only the effect of *prima facie* evidence" and is open to contradiction by the carrier when sued for recovery of the amount awarded.

In the light of the holdings of the Supreme Court of the United States on these matters, it is clear that in this case neither the trial court nor this Court is bound by the reparation order of the Interstate Commerce Commission, but that it is the duty of the court to weigh the whole matter and after having given proper consideration to the findings of the Commission to enter such judgment as the facts and the law require.

It is evident that the Kanawha Central Railway Company should make reparation to the defendants in error for the excess of rates charged against them by the said carrier and the other railway companies from June 23, 1922, to July 13, 1923, on the basis found by the Interstate Commerce Commission. The said carrier seems not to question the correctness of the judgment of the circuit court of Kanawha County based on the reparation order of the Commission, and that company is not before us on this writ of error. But what must be said concerning the Chesapeake & Ohio Railway Company? In justification of the reparation order and the subsequent

judgment of the circuit court it is urged on behalf of defendants in error that although the Chesapeake & Ohio did not get any of the forty-cent rate, yet, "it took all of the legal freight rate, and the Kanawha Central rendered all of service of a commission carrier between the mines and Brounland, which the Commission has found is and was worth 29 cents per ton"; that "the Chesapeake & Ohio Railway Company only rendered part of the service, and took all of the money that should legally be charged for the entire service, and it found in effect that the combination or through rate was unreasonable to the extent of forty cents per ton"; that "to hold the reasoning of the Chesapeake & Ohio good it would have to be held that the coal transported on the Kanawha Central would have to be transported for nothing;" that the two railway companies "have jointly participated in an unreasonable rate and received the benefits thereof, either in money or service." And further it is said, "If the Commission in the present case had not condemned the through rate including tariff of the Chesapeake & Ohio and connecting carriers as unreasonable, then reparation could only be recovered from the Kanawha Central tariff alone, and leave the remaining rate undisturbed, but it specifically held that the through rate from the mines to points of destination was unjust and unreasonable." And further, the query is propounded as to whether the Chesapeake & Ohio shall be relieved as to its participation in the condemned rate although it received the lion's share of the unreasonable rate, and the Kanawha Central rendered identically the same service from June 23, 1922, until July 13, 1923, for nothing for the Chesapeake & Ohio Railway Company, for which it is now paying 29 cents per ton? It is further urged that the Kanawha Central and the Chesapeake & Ohio were joint tort-feasors, and that each is liable for the whole damage.

On behalf of the Chesapeake & Ohio Railway Company it is urged that before it can be held liable in this action it must have been guilty of some act of omission or commission, or must have participated in such act, or must be held liable under the doctrine of *respondeat superior;* that said company "did not commit, or participate in, either directly or indi-

rectly, the tortious act which caused the damages which the plaintiffs claim to have suffered''; that the practice of the Interstate Commerce Commission ''in cases of this sort, both before and after the decision of this case, has been to fix the unreasonableness in the short line, where the short line rate alone caused the unreasonableness, and award reparation against it, and it alone''; that ''the *prima facie* presumption created by the findings and order of the Commission was completely and conclusively rebutted by the evidence of the defendant, the Chesapeake & Ohio Railway Company.''

At this point it is well that emphasis be laid on the fact of the distinction which exists between joint rates and combination rates. Ordinarily a joint rate is a rate established by an arrangement between connecting railroads for the continuous carriage of goods from the originating point on the line of one carrier to destination and fixing the proportion that each of the carriers is to receive of such rate. A combination rate is an aggregation of several rates fixed independently by the several carriers forming the ''through route''; such rate is sometimes referred to as ''the sum of the locals''. Robert's Federal Liability of Carriers, (2nd Ed.), Vol. 1, section 188. Either of the said two classes of rates may constitute a ''through rate''. ''Carriers who by means of a joint rate make excessive charges are liable jointly and severally for the damages sustained. The establishment of a joint rate by the concurrence of connecting carriers is necessarily the act of each, because the establishment of the rate is done by their joint agreement and every carrier who participates is liable *in solido* like every other joint tortfeasor.'' Idem, section 341. In *L. & N. Railroad Co.* v. *Sloss-Sheffield Co.*, 269 U. S. 217, the law is thus stated: ''The carriers participating in forming an excessive joint through rate are jointly and severally liable for resulting damages to shippers, without regard to the division of the rate among the carriers.'' In the case at bar, however, the cause of the reparation order of the Interstate Commerce Commission was not in a ''joint rate'' but in a ''combination rate'' aggregating the Kanawha Central rate and the Kanawha District schedule of rates.

478

The Interstate Commerce Commission not only recognizes the distinction between joint rates and combination rates but recognizes a difference in liability of participants in combination rates, depending upon the circumstances of the case. If only one of the roads rendering service under a combination of rates is at fault then it alone will be held liable for reparation. But if other roads, participating in such service, share in the wrong, they too will be held liable. We are impressed that this latter distinction has not been kept clearly in mind by counsel for plaintiff in error in the citation of cases which it is claimed show that the Interstate Commerce Commission has ruled differently in the instant case from other similar cases. Cases thus cited are: *Midwest Refining Co.* v. *Great Northern Ry. Co. et al,* 122 I. C. C. 205; *Burns & Knapp* v. *Big Sandy & Ky. Ry. Co.,* 126 I. C. C. 410; *U. S.* v. *Director General of Railroads,* 118 I. C. C. 677; *Gulf Coal Co.* v. *Virginian Ry. Co.,* 140 I. C. C. 657. In the *Midwest Refining Company* case it appears that three railroad companies participated in the transportation of tonnage under a combination of rates. Complaint was made against the rate charged by the North & South Railway Company, one of the three carriers involved. The Commission said: ''It is well settled that where an unreasonable joint rate has been charged the liability of the carriers is joint and several, but in the case of a combination rate an entirely different situation is presented. In the present case, neither the Great Northern nor the Chicago, Burlington & Quincy had control over any factor of the combination rate except that maintained by it, nor did either of these carriers contribute in any way to the injury resulting from any unreasonableness existing in the rate maintained by the North & South. To find in such a case that carriers are jointly and severally liable would be to require two carriers to bear in part the injury done by the third carrier, where the former had no control over the action or rates of the latter.'' The facts of that case, however, differ from the facts of the case at bar in the very important and controlling features that there only the North & South rate was assailed and found unreasonable, while here not only was the short haul rate condemned, but particularly was the

combination of rates assailed and found unreasonable, to the extent that the Kanawha District rate did not cover the service rendered by the Kanawha Central.

In the *Gulf Coal Company* case, the Virginian Ry. Co. hauled coal from Hot Coal, West Virginia, to Pemberton, West Virginia, a distance of six miles, where it connected with the C. & O. Combination rates were in effect. Complainants objected to the charge of I1.13 per ton for the short haul. The Commission in awarding reparation held that the through rates were unreasonable to the extent that the factor from Hot Coal to Pemberton exceeded forty cents per ton and that complainant was entitled to reparation on that basis from the Virginian Ry. Company. Thus the Commission condemned only a part of the rate for the short haul and not the through rate from the mines to points of destination.

In the *Burns & Knapp* case, the Big Sandy & Kentucky River Railway Company hauled complainants' lumber from Sherman, Kentucky, the origin, to Dawkins, Kentucky, a distance of eight miles, where it connected with the C. & O. Through rates to interstate destinations were composed of the local rates of the Big Sandy & Kentucky River Railway Company up to Dawkins, plus the rates from Dawkins beyond. Complainants asked for reparation, and based their demands on allegations that rates from Sherman to various destinations, namely, in central and trunk line territories, were unreasonable. The Commission awarded reparation against the Big Sandy & Kentucky River Railway Company alone stating: "To remove any doubt we now amend our supplemental report to find that the Sherman-to-Dawkins factors of the through interstate rates, amounting to 6 cents prior to June 25, 1918, and to 7.5 cents thereafter, were unreasonable to the extent that they exceeded the contemporaneous aggregate of intermediate rates, amounting to 5 cents and 6.5 cents, respectively; that complainants made shipments and paid and bore the charges thereon upon the basis of the 6-cent and 7.5-cent rates and were damaged thereby; and that they are entitled to reparation from the Big Sandy & Kentucky River Railway Company on all interstate shipments on the basis of the difference between the 6-cent and 7.5-cent rates charged and the

5-cent and the 6.5-cent rates herein found reasonable.'' The difference between this case and the one at bar is patent.

The facts in *U. S.* v. *Director General of Railroads* appear to be similar to the two cases above. The Wharton & Northern Railroad is a branch line extending from Wharton, N. J., through Picatinny and Lake Denmark to Green Pond Junction. It connects with trunk lines at both its termini. Combination rates were in effect to points in the United States and Canada. The Navy and War Departments complained that the class rates of the Wharton as factors of through rates to and from Lake Denmark and Picatinny were unreasonable. The Commission awarded reparation against the Wharton alone, holding that the combination class rates over a stated period were unreasonable to the extent that the components thereof over the Wharton exceeded a certain schedule of rates therein before found reasonable. Again it is seen that the unreasonableness of one factor of the through rate as distinguished from the unreasonableness of the entire through rate bears the burden.

Much more in point than the above cases is the case of *Nelson Fuel Company et al.* v. *Chesapeake & Ohio Ry. Co.,* 140 I. C. C. 167. The facts appear from the Commission's statement that ''the rates on coal, in carloads, from complainants' mines on the Greenbrier & Eastern Railroad to interstate destinations are, and for the future will be, unreasonable to the extent that they exceeded or may exceed the group rates contemporaneously maintained from branch-line points on the Chesapeake & Ohio Railway in the New River district in West Virginia to the same destinations.'' That is like the case at bar. Not merely the rate for the short haul was condemned, as in the cases above mentioned, cited by plaintiff in error, but the combination of rates was condemned because exceeding the district rate.. The Commission said: ''Under our findings the exaction of through rates in excess of the district rates, and the combined failure of the defendants to establish district rates from complainants' mines resulted in an unreasonable and unlawful situation for which all of the defendants who participated in the traffic are answerable in damage.'' (120 I. C. C. 726.)

On behalf of the plaintiff in error we are cited the case of *Central Railroad Co.* v. *U. S.*, 257 U. S. 247. That case holds that connecting carriers "can be held jointly and severally responsible for unjust discrimination only if each carrier has participated in some way in that which causes the unjust discrimination." In our opinion that is just what happened in the instant case; that the Chesapeake & Ohio did participate in that which caused a wrong to the complainants. Nor is there anything in the holding in the case of *L. & N. Railroad Company* v. *Sloss-Sheffield Co., supra,* also cited for plaintiff in error, at variance with the conclusions herein reached. The query is presented, however, as to how the Chesapeake & Ohio was to know in the instant case that it was making an excess charge until the Interstate Commerce Commission so declared? The answer is that it should have been evident to the latter company that the charge for service beyond Brounland was excessive, it appearing that the Kanawha District rate then included not only the Chesapeake & Ohio proper, west of Gauley, West Virginia, to the Kentucky state line, but also mines on the Chesapeake & Ohio Railway Company's branches, such as Paint Creek Branch, Cabin Creek Branch, Coal River Branch and the Guyandotte Valley Branch, and on certain of its independent short line connections, and that the distances from mines on the Kanawha Central to interstate destinations generally, are approximately 25 miles less than the average from other mines in the group taking the district rates.

The crux of the situation is this: The total charge was excessive. The excessiveness lay partly in the forty-cent rate charged by the Kanawha Central and partly in the charge by the Chesapeake & Ohio of the full Kanawha District rate from Brounland to destination when the latter carrier and connecting carriers other than Kanawha Central were not entitled to the full amount of the same. The Kanawha Central had promulgated its tariff; the Chesapeake & Ohio had promulgated its tariff (Kanawha District schedule); each was found excessive in that there should have been no separate rate by Kanawha Central, but its pay for service should have been taken care of out of the Kanawha District rate then in

effect. Although the Chesapeake & Ohio protested against the forty-cent rate of the Kanawha Central, it continued to collect the full district rate from Brounland to destination. The Chesapeake & Ohio and other connecting carriers should have shared the Kanawha District rate with the Kanawha Central, and the latter should have made no separate charge. · All the participants were at fault. They were joint tort-feasors. Both the Kanawha Central and the Chesapeake & Ohio are liable for the full damage occasioned the defendants in error. ·The liability of the Chesapeake & Ohio does not depend upon the act of the Kanawha Central in imposing an excessive rate to Brounland, but upon its own act in being a party to the charging of the full district rate for only a part of the service, and thus participating in unreasonable and unlawful exactions of the complainants.

We affirm the judgment of the trial court.

*Affirmed.*