**ATLANTIC & Y. RY. CO. et al. v. CARO-
LINA BUTTON CORPORATION
et al.
No. 3704.**

Circuit Court of Appeals, Fourth Circuit.
Jan. 8, 1935.

Charles Clark, of Washington, D. C. (F.
P. Hobgood and Kenneth M. Brim, both
of Greensboro, N. C., on the brief), for ap-
pellants.

Norman Block, of Greensboro, N. C.
(Harry Rockwell, of Greensboro, N. C., on
the brief), for appellees.

Before PARKER and SOPER, Circuit
Judges, and WATKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal from judgments in
two suits, heard together in the court be-
low, which were instituted under section
16 (2) of the Interstate Commerce Act,
49 USCA § 16 (2), to recover damages
awarded by the Interstate Commerce Com-
mission for the charging of unreasonable
rates on interstate shipments of freight. In
proper proceedings filed with the Commis-
sion, plaintiffs had assailed as unreasonable
the through rates on bones, other than hu-
man or fresh meat bones, which were ship-

ped on through bills of lading from Chicago, Ill., and Brighton, Mass., to Mt. Airy, N. C. The Commission found the rates unreasonable and awarded damages. The suit of the plaintiff Hale Manufacturing Company was against the Atlantic & Yadkin Railway Company, the delivering carrier, which had collected the charges held to be unreasonable. That of the plaintiff Carolina Button Corporation was against the Atlantic & Yadkin, as the delivering carrier, and a number of others that had participated in the movement and shared in the rate. At the conclusion of the evidence in the court below, both sides moved for a directed verdict; and the judge, properly holding this to be a waiver of jury trial, found the facts and entered judgment for the plaintiffs. The defendants have appealed.

The shipments involved were through shipments on through bills of lading. The defendants collected $8.95 per ton on the shipments from Chicago to Mt. Airy, this being a combination of the rate of $2.80 from Chicago to Evansville, Ind., with that of $6.15 from Evansville to Mt. Airy. They collected $11.25 per ton on shipments from Brighton to Mt. Airy, this being a combination of the rate of $7.60 from Brighton to Richmond, Va. with that of $3.65 from Richmond to Mt. Airy. The Atlantic & Yadkin Railway Company, as the delivering carrier, collected the through rates and divided the money collected among the carriers who had participated in the shipments.

Bones of the character here involved take the same rate as fertilizer and fertilizer materials. The Commission compared the rates assailed with the scale rates prescribed on fertilizer and fertilizer materials in Fertilizers and Fertilizer Materials Between Southern Points, 113 I. C. C. 389 (known as the Southern Fertilizer Case), Ohio Farm Bureau Federation v. A. & W. Ry. Co., 120 I. C. C. 361 (known as the Northern Fertilizer Case), Fertilizer and Materials, 151 I. C. C. 613 (known as the Interterritorial Case), and with rates which it had prescribed in a number of other cases, and held that the scale prescribed in the Interterritorial Case was the proper one to apply to the shipments in question. In holding the rates assailed to be unreasonable and awarding reparation to plaintiffs because they had been exacted, the Commission said: "We find that the rates assailed were, are, and for the future will be unreasonable to the extent that they exceeded, exceed, or may exceed

the rates found reasonable on fertilizer and fertilizer materials for like distances in the Interterritorial Case, applied to distances over routes of the movement for the past and over the shortest routes over which carload traffic can be moved without transfer of lading for the future; that complainant and intervener received the shipments described and paid and bore the charges thereon; that they were damaged in the amount of the difference between the charges paid and those which would have accrued at the rates herein found reasonable for the past, and are entitled to reparation, with interest."

Pursuant to order of the Commission, rule V, statements were then filed by the carriers; and upon these statements orders were entered by the Commission awarding damages to plaintiffs, $1,228.62 to Hale Manufacturing Company and $744.32 to Carolina Button Corporation, and showing the amount thereof which each of the participating carriers was authorized and directed to pay. Upon refusal of the carriers to comply with these orders, suits were instituted for the total of the damages so awarded, the Hale Manufacturing Company suit, as above stated, being against the Atlantic & Yadkin Railway Company, the delivering carrier, alone, and the Carolina Button Company suit being against that carrier and others which had participated in the shipment, although all which had thus participated were not made parties. The judge below found that the rates were unreasonable; that the plaintiff in each case had paid and borne the charges there involved; and that the defendants in each case were indebted to the plaintiff therein to the extent of the total amount of damages awarded by the Commission in that case. He entered judgment accordingly, and the defendants have appealed in both cases.

The points presented by the appeal were raised in the court below by motion to direct a verdict, and no point was there made in the Carolina Button Corporation case that all of the defendant carriers had not participated in all of the shipments involved in that case, or that any carrier was not liable for the full amount of the damages awarded if they were liable as joint tortfeasors. The contentions of defendants are: (1) That the Commission exceeded its powers in making a finding that the through rate was unreasonable and awarding reparation against the participating carriers without finding any factor of that rate unreasonable; (2) that the Commission

erred in holding the combination through rates unreasonable in view of the fact that the factors of the combination rates assailed were not higher than the rates which the Commission had previously prescribed for local shipments over the distance of each factor; and (3) that the through rates assailed were held unreasonable upon comparison with rates which the Commission had fixed upon an erroneous interpretation of the Hoch-Smith Resolution (49 USCA § 55).

There can be no serious question, we think, as to the power of the Commission to declare the through rates unreasonable, without passing upon the reasonableness of the local rates of which they are composed. Local rates may be entirely reasonable when applied to local traffic and yet a through rate formed by combining them may be unreasonable when applied to traffic moving for a long distance. The problems involved in the construction of local rates may be, and generally are, entirely different from those which must be considered with reference to through rates; and we see no reason why the Commission should condemn any local rate as unreasonable, because it is of opinion that a through rate formed by the combination of locals is unreasonable.

It is made the duty of carriers to establish through routes, and just and reasonable rates, fares, and charges applicable thereto. 49 USCA § 1 (4). All charges made for any service rendered are required to be just and reasonable and every unjust and unreasonable charge is prohibited. 49 USCA § 1 (4). And the Commission is authorized to determine and prescribe what will be the just and reasonable individual or joint rate, fare, or charge, whenever after hearing it "shall be of opinion that any individual or joint rate, fare, or charge whatsoever demanded, charged, or collected by any common carrier or carriers subject to this chapter * * * is or will be unjust or unreasonable." 49 USCA § 15 (1). And with reference to this power of the Commission the Supreme Court in Atchison, T. & S. F. Ry. Co. v. U. S., 279 U. S. 768, 776, 49 S. Ct. 494, 497, 73 L. Ed. 947, speaking through Mr. Justice Brandeis, said: "The Commission's power to declare rates unreasonable applies alike to all rates, be they joint, local, or proportional. The Commission may, and in controversies involving through rates often does, deal with one factor only of the combination of rates which make up the through

rate, and that factor may be a proportional rate. The broad power to pass on the reasonableness of rates conferred upon the Commission in 1887 has not been in terms limited by any amendatory act. On the other hand, there has been much legislation designed to make the power more effective. The special power to establish through routes and joint rates was not conferred until 1906. Act of June 29, 1906, c. 3591, § 4, 34 Stat. 584 [49 USCA § 15]. There is not, in that act as amended (see United States v. American Express Co., 265 U. S. 425, 430, 44 S. Ct. 560, 68 L. Ed. 1087, note 2), or in any decision of this court construing it, or in any of the decisions of the Commission applying it, to which attention has been called, the slightest basis for the suggestion that, in conferring the restricted power to establish through routes, Congress intended to limit the theretofore unrestricted power of the Commission to pass upon the reasonableness of rates."

It is argued that, upon condemnation of a through combination rate without any condemnation of any of the factors entering into it, the carriers are unable to determine how the rate established as reasonable shall be divided among themselves. The answer to this is that the Commission has indicated the basis upon which the rate is established, and it should be practicable for the carriers to apportion it among themselves. If they are unable to agree upon the apportionment, or if the apportionment agreed upon is unjust, unreasonable, unequitable, preferential, or prejudicial, the Commission may make the apportionment. 49 USCA § 15 (6). Certainly, there is no reason why the failure of the Commission to direct the apportionment among the carriers of the through rate, which it prescribes as reasonable, should be held to invalidate its action in establishing such rate or in condemning a prior through combination rate as unreasonable.

And we think it equally clear that, where a combination through rate is declared unreasonable by the Commission, damages may be awarded for the exaction of the rate against all of the carriers who have participated therein. Because of the duty of the carriers to establish through routes and just and reasonable rates and charges, the exaction of an unreasonable combination rate is a violation of the act, even though, as a result of their failure to promulgate reasonable joint through

rates, such combination rate may be the only rate lawfully applicable to the shipment. For such violation the carriers are liable in damages; and we think that all who have participated in the through rate are jointly and severally liable, just as in the case of any other joint tort. It is true that in such case they have not participated in the publication of an unreasonable joint rate in violation of the act, as in the case of Louisville & N. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U. S. 217, 46 S. Ct. 73, 70 L. Ed. 242; but they have participated in what is the real wrong in violation of the act, i. e. they have participated in charging and have shared in the division of the rate held by the Commission to be unreasonable. Lewis-Simas-Jones Co. v. Southern Pacific Co., 283 U. S. 654, 660, 51 S. Ct. 592, 75 L. Ed. 1333. Section 8 of the Interstate Commerce Act, 49 USCA § 8, would seem to settle the liability of all of the participating carriers in such case. It provides: "In case any common carrier subject to the provisions of this chapter shall do, cause to be done, or permit to be done any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

A case directly in point is Atlantic Coast Line R. Co. v. Smith Bros. (C. C. A. 5th) 63 F.(2d) 747, 748. That case involved a combination through rate held unreasonable by the Commission, and it was held that each of the carriers participating in the rate was jointly and severally liable for damages sustained by the shipper. The court, speaking through Judge Hutcheson, said: "It is the settled rule of the Commission that, 'if a through rate, joint or combination, is found unreasonable and reparation is awarded the order entered runs against the carriers, collectively, that participated in the transportation.' Pinson Brokerage Co. v. C. & G. R. R. Co., 89 I. C. C. 126; Hansen-Peterson Co. v. A., T. & S. F. R. Co., 113 I. C. C. 575; Illinois Powder Co. v. Chicago, P. & St. L. R. Co., 165 I. C. C. 127. This rule has the

approval of the courts. Louisville & N. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U. S. 217, 46 S. Ct. 73, 70 L. Ed. 242; News Syndicate Co. v. N. Y. Central R. Co., 275 U. S. 187, 48 S. Ct. 39, 72 L. Ed. 225; Lewis-Simas-Jones Co. v. So. Pac. Co., 283 U. S. 654, 51 S. Ct. 592, 75 L. Ed. 1333; Kanawha Black Band Coal Co. v. Chesapeake & O. R. Co., 107 W. Va. 469, 148 S. E. 855."

Another case in point is Kanawha Black Band Coal Co. v. C. & O. Ry. Co., 107 W. Va. 469, 148 S. E. 855, 860. That case involved a combination through rate held unreasonable by the Commission, and the roads participating in the rate were held jointly and severally liable to the shipper for the damages sustained. The Supreme Court of Appeals of West Virginia, after distinguishing the Interstate Commerce Commission cases in which only a part of a combination through rate was condemned, rested the joint and several liability of the carriers upon the fact that they had participated in the collection of the through rate which had been condemned, saying: "All the participants were at fault. They were joint tort-feasors. Both the Kanawha Central and the Chesapeake & Ohio are liable for the full damage occasioned the defendants in error. The liability of the Chesapeake & Ohio does not depend upon the act of the Kanawha Central in imposing an excessive rate to Brounland, but upon its own act in being a party to the charging of the full district rate for only a part of the service, and thus participating in unreasonable and unlawful exactions of the complainants."

Defendants admit that they would be jointly and severally liable to plaintiffs if they had established a joint rate and exacted it instead of the combination rate which was exacted. Yet they admit also that the joint rate would have been collected and distributed among them in the same way as was the combination rate. We cannot think that there is less liability for participating in a wrongful act because the agreement to so participate is implied than there would be if the agreement were embodied in an express contract. Where an unreasonable joint through rate is filed, there is an express agreement between the participating carriers to do that which the Commerce Act condemns; where the unreasonable through rate is made up by combination of locals, such agreement is necessarily implied. The participation is the same in the

874

one case as in the other; and we see no reason for a difference with respect to the liability of the participants.

 The second point of defendants is based upon a misapplication of the decision of the Supreme Court in Arizona Grocery Co. v. A. T. & S. F. R. Co., 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348. In that case it was held that "where the Commission has, upon complaint and after hearing, declared what is the maximum reasonable rate to be charged by a carrier, it may not at a later time, and upon the same or additional evidence as to the fact situation existing when its previous order was promulgated, by declaring its own finding as to reasonableness erroneous, subject a carrier which conformed thereto to the payment of reparation measured by what the Commission now holds it should have decided in the earlier proceedings to be a reasonable rate." Defendants argue that, as the factors entering into the combination rates here involved, were less than the Commission had fixed in the Northern and Southern Fertilizer Cases, the Commission could not condemn the combination rate involving these factors. The conclusion does not follow. As pointed out above, the Commission in condemning the through combination rate, was not in any way condemning or passing upon either of the factors of the combination, but the rate as an entirety.

The point relating to the Hoch-Smith Resolution (49 USCA § 55) is entirely without merit. The point is that in the Southern Fertilizer Case the Commission made the same error that was condemned by the Supreme Court in Ann Arbor R. Co. v. U. S., 281 U. S. 658, 50 S. Ct. 444, 74 L. Ed. 1098, and that the Northern scale of fertilizer rates was merely the Southern scale adjusted. to fit conditions in central territory. It does not appear, however, that either the Northern or Southern scale of fertilizer rates is subject to condemnation on the ground alleged. Both were based upon a careful study of traffic conditions, and in neither case was there suggestion that the rates prescribed were less than reasonable maximum rates, although the Commission recognized the importance of lenient treatment of fertilizers in distributing the burden of freight transportation because of the relationship of the transportation of fertilizer to agriculture. In neither case, however, does it appear that more was done than was approved in the Ann Arbor Case, viz., the condition of the industry was given such consideration as was reasonable "considering the nature and cost of the transportation service and the need for maintaining an adequate transportation system." 281 U. S. at page 669, 50 S. Ct. 444, 447, 74 L. Ed. 1098. Defendants say that they are not asking this court to condemn the Northern or the Southern fertilizer scales; but, if these scales are sustained, their point with reference to the Hoch-Smith resolution amounts to nothing.

For the reasons stated, the judgments appealed from will be affirmed.

Affirmed.