ANN ARBOR RAILROAD COMPANY ᴇᴛ ᴀʟ. *v.*
UNITED STATES ᴇᴛ ᴀʟ.

No. 7.   Argued February 25, 1929.   Reargued October 21, 22, 1929.—
Decided June 2, 1930.

*Mr. Herman Phleger,* with whom *Messrs. Maurice E. Harrison, James S. Moore, Jr., Platt Kent, James E. Lyons, Elmer Westlake, R. S. Outlaw, M. B. Pierce, F. D. McKenney, Clyde Brown, P. F. Gault, J. N. Davis, A. B. Enoch, Kenneth F. Burgess, Elmer A. Smith, F. M. Angellotti, E. W. Camp, A. S. Halsted,* and *Guy V. Shoup* were on the brief, for appellants.

*Solicitor General Hughes,* with whom *Messrs. J. Stanley Payne,* Assistant Chief Counsel, Interstate Commerce Commission, *Daniel W. Knowlton,* Chief Counsel, and *George C. Butte,* Special Assistant to the Attorney General, were on the brief, for the United States et al., on the reargument.

*Mr. Allan P. Matthew,* with whom *Messrs, J. M. Mannon, Jr., John F. Cassell, John O. Moran,* and *J. Richard Townsend* were on the brief, for the California Growers' and Shippers' Protective League, intervener and appellee.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This is a suit to set aside an order of the Interstate Commerce Commission condemning existing rates for the transportation of deciduous fruits from California to eastern destinations—chiefly points between the Mississippi River and the Atlantic seaboard. A hearing in the District Court before three judges under § 47, Title 28, U. S. C., resulted in a decree dismissing the bill; and a direct appeal has brought the case here.

The proceeding which resulted in the order was instituted before the commission December 27, 1926, by the California Growers' and Shippers' Protective League through a complaint assailing the existing rates as unjust and unreasonable under § 1 of the Interstate Commerce Act, unduly and unreasonably preferential under § 3 of that act, and having an unjust and unreasonable basis and being too high within the meaning of the joint resolution of Congress of January 30, 1925, known as the Hoch-Smith Resolution. The order was made July 20, 1927, and was changed by the commission in some particulars November 14 of that year. Originally it was to be effective October 10, 1927, but the Commission extended the time to January 10, 1928.

The plaintiffs in the suit are the railroad companies which participate in the transportation. In their bill and on this appeal they challenge the validity of the order upon the ground, among others, that the Commission based it upon the joint resolution and a construction thereof which is inadmissible.

The Interstate Commerce Act, Title 49, U. S. C., provides in §§ 1, 3 and 15 —

Sec. 1, par. (5) "All charges . . . shall be just and reasonable, and every unjust and unreasonable charge . . . is prohibited and declared to be unlawful: . . . ."

Sec. 3, par. (1) " It shall be unlawful . . . to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Sec. 15, par. (1) " Whenever, after full hearing, upon a complaint . . . or . . . under an order for investigation and hearing made by the commission on its own

initiative, . . . the commission shall be of opinion that any individual or joint rate, fare, or charge whatsoever . . . is or will be unjust or unreasonable or unjustly discriminatory or unduly preferential or prejudicial, . . . the commission is authorized and empowered to determine and prescribe what will be the just and reasonable individual or joint rate, fare, or charge, or rates, fares, or charges, to be thereafter observed in such case . . . ."

The joint resolution, c. 120, 43 Stat. 801, reads:

" That it is hereby declared to be the true policy in rate making to be pursued by the Interstate Commerce Commission in adjusting freight rates, that the conditions which at any given time prevail in our several industries should be considered in so far as it is legally possible to do so, to the end that commodities may freely move.

" That the Interstate Commerce Commission is authorized and directed to make a thorough investigation of the rate structure of common carriers subject to the interstate commerce act, in order to determine to what extent and in what manner existing rates and charges may be unjust, unreasonable, unjustly discriminatory, or unduly preferential, thereby imposing undue burdens, or giving undue advantage as between the various localities and parts of the country, the various classes of traffic, and the various classes and kinds of commodities, and to make, in accordance with law, such changes, adjustments, and redistribution of rates and charges as may be found necessary to correct any defects so found to exist. In making any such change, adjustment, or redistribution the commission shall give due regard, among other factors, to the general and comparative levels in market value of the various classes and kinds of commodities as indicated over a reasonable period of years, to a natural and proper development of the country as a whole, and to the maintenance of an adequate system of transportation. In the progress of such investigation the commis-

sion shall, from time to time, and as expeditiously as possible, make such decisions and orders as it may find to be necessary or appropriate upon the record then made in order to place the rates upon designated classes of traffic upon a just and reasonable basis with relation to other rates. Such investigation shall be conducted with due regard to other investigations or proceedings affecting rate adjustments which may be pending before the commission.

" In view of the existing depression in agriculture, the commission is hereby directed to effect with the least practicable delay such lawful changes in the rate structure of the country as will promote the freedom of movement by common carriers of the products of agriculture affected by that depression, including livestock, at the lowest possible lawful rates compatible with the maintenance of adequate transportation service: *Provided,* That no investigation or proceeding resulting from the adoption of this resolution shall be permitted to delay the decision of cases now pending before the commission involving rates on products of agriculture, and that such cases shall be decided in accordance with this resolution."

The original and supplemental opinions of the commission show quite plainly that the commission based the order entirely upon the joint resolution. It is said in the opinions that " the joint resolution was primarily relied upon " by the complainant; that while a violation of § 3(1) of the Interstate Commerce Act was alleged in the complaint " no great reliance was placed upon that allegation "; that the " primary issue to be determined " was whether the existing rates were in accord with the resolution; that the resolution effected a change " in the basic law "; and that this change operated to eliminate a decision made June 25, 1925, in another proceeding between the same parties wherein the commission found the same rates neither unreasonable nor unduly preferential and

sustained them as lawful rates, 100 I. C. C. 79. True, in both the original and supplemental opinions it is said that the existing rates are unreasonable, but the opinions taken as a whole show that this means the rates were deemed unreasonable under the joint resolution when construed as the commission construed it, and not that they were deemed unreasonable under § 1(5) or § 3(1) of the Interstate Commerce Act. Throughout the opinions it is manifest that the commission was testing the reasonableness and validity of the rates by considerations not applicable under those sections but believed by it to have been brought into the problem by the resolution.

The joint resolution is the outgrowth of several measures proposed in Congress but not adopted. Some of the measures may have been designed by their proposers to make real changes in existing laws relating to transportation rates. But they are not before us. The measure that is before us is the joint resolution which emerged from the legislative deliberations and proceedings. It is brought here to the end that we may determine its proper construction, which of course is to be done by applying to it the rules applicable to legislation in general.

The question presented is whether the resolution changes the substantive provisions of existing laws relating to transportation rates, and particularly whether rates which would be lawful under those laws are made unlawful by it.

The resolution is in three paragraphs. The first declares it to be a true policy in rate making that the conditions which at any given time prevail in the several industries " should be considered " in so far as it is " legally possible " to do so, to the end that commodities may move freely. This policy is not new. In rate making under existing laws it has been recognized that conditions in a particular industry may and should be considered along with other factors in fixing rates for that

industry and in determining their reasonableness; and it also has been recognized that so far as can be done with due regard for the interests affected rates should be such as will permit the commodities to which they relate to move freely in the channels of commerce.

The second paragraph is devoted chiefly to requiring the Commission to proceed along stated lines for the purpose of securing prompt observance of existing laws, such as §§ 1(5) and 3(1) of the Interstate Commerce Act, requiring that all rates be just and reasonable and prohibiting all undue preferences and unjust discriminations, whether relating to shippers, commodities, classes of traffic or localities. The only substantive provision in the paragraph is one declaring that in the adjustment of rates the factors to be considered shall include (a) the general and comparative levels in market value of the various classes and kinds of commodities as indicated over a reasonable period of years, (b) a natural and proper development of the country as a whole, and (c) the maintenance of an adequate system of transportation. These matters have all been regarded as factors requiring consideration under existing laws. The prohibition in § 3(1) of the Interstate Commerce Act of any undue preference of one locality over another always has been treated as intended to prevent the use of rates as a means of promoting the artificial development of one locality to the detriment of another. And what is said about the maintenance of an adequate system of transportation is but a reiteration of provisions embodied in existing laws.

The third paragraph was construed by the commission as making a change "in the basic law," as placing agricultural products in a "most favored" class, and as justifying a reduction in the rates on deciduous fruits moving from California to eastern points, notwithstanding most of the carriers "have not as yet made the fair return" for which § 15a of the Interstate Commerce Act

makes provision as a means of securing the maintenance of an adequate transportation system. Indeed, it is apparent from the commission's opinions that it regarded this paragraph as requiring it to condemn the existing rates as unreasonable and unlawful, although, had they been considered independently of the paragraph, they must have been upheld as reasonable and lawful under the applicable sections, 1(5) and 3(1), of the existing law.

We are of opinion that the commission's construction can not be supported. The paragraph does not purport to make any change in the existing law, but on the contrary requires that that law be given effect. Nor does it purport to make unlawful any rate which under the existing law is a lawful rate, but on the contrary leaves the validity of the rate to be tested by that law.

The paragraph requires only that " lawful changes " in the rate structure be made; and we find in it no sanction for any other change. Unless the paragraph can be said to give its own definition of a lawful change, reference must be had to § 15, par. (1) of the existing law which shows under what conditions and how a lawful change of rate may be effected by the commission.

The commission stresses the concluding words in the same sentence with " lawful changes " and evidently regards them as qualifying the natural import of the latter and in effect specifying a new and reduced scale to be applied in rate making. The words stressed are, " at the lowest possible lawful rates compatible with the maintenance of adequate transportation service."

Considering the connection in which these words are brought into the sentence, we think they fall much short of supporting the construction adopted by the commission. They are more in the nature of a hopeful charac-

terization of an object deemed desirable if, and in so far as, it may be attainable, than of a rule intended to control rate making. See *United States* v. *New York Central R. R. Co.*, 263 U. S. 603. Of course they should not lightly be disregarded. Neither should they lightly be accepted as overturning positive and unambiguous provisions constituting part of a system of laws reflecting a settled legislative policy, such as the Interstate Commerce Act. If they mean no more than that the depressed condition of the industry is to be given such consideration as may be reasonable considering the nature and cost of the transportation service and the need for maintaining an adequate transportation system, they work no change in the existing law. But if they mean more and are intended to require that rates be reduced to some uncertain level below that standard, they give rise to a serious question respecting the constitutional validity of the paragraph of which they are a part. See *Northern Pacific R. R. Co.* v. *North Dakota*, 236 U. S. 585, 595; *Norfolk & Western Ry. Co.* v. *West Virginia*, 236 U. S. 605, 608. By reason of their uncertain meaning, *United States* v. *Barnes*, 222 U. S. 513, 520, and of the constitutional question which would be raised if they were taken as the commission thinks they should be taken, *Harriman* v. *Interstate Commerce Commission*, 211 U. S. 407, 422, we think they must be held to work no substantial change in the meaning or operation of §§ 1(5), 3(1) and 15, par. (1) of the existing law.

Our conclusion is that the order of the commission was based upon an erroneous construction of the joint resolution, and therefore should have been set aside by the court below.

*Decree reversed.*