ATCHISON, T. & S. F. RY. CO. et al. v. UNITED STATES et al.

No. 10479.

District Court, N. D. Illinois, E. D.

July 8, 1931.

Frederick H. Wood, of New York City, Walter McFarland and P. F. Gault, both of Chicago, Ill., Douglas F. Smith, of Omaha, Neb., H. H. Larimore, of St. Louis, Mo., J. N. Davis, of Chicago, Ill., A. B. Mason, of San Francisco, Cal., R. J. Hagman and M. L. Countryman, Jr., both of St. Paul, Minn., R. S. Outlaw and Leslie Craven, both of Chicago, Ill., Wm. D. Whitney, of New York City, and A. B. Enoch, of Chicago, Ill. (W. F. Dickinson, O. W. Dynes, R. V. Fletcher, E. E. McInnis, and Bruce Scott, all of Chicago, Ill., of counsel), for petitioners.

Dick Dixon and Frank A. Leffingwell, both of Dallas, Tex., for petitioners Terminal Grain Co., Morten Milling Co., Stanard-Tilton Milling Co., and Universal Mills.

James Stillwell, of Pittsburgh, Pa., Theodore Schmidt, of Chicago, Ill., M. B. Pierce, of New York City, H. S. Harr, of Cincinnati, Ohio, W. J. Stevenson, of Cleveland, Ohio, J. R. Connell, of Mt. Carroll, Ill., and D. P. Connell, of Chicago, Ill., for intervening petitioners carriers in Eastern District.

Elmer B. Collins, Sp. Asst. to Atty. Gen., John Lord O'Brian, Asst. to Atty. Gen., and George E. Q. Johnson, U. S. Atty., of Chicago, Ill., for the United States.

Edward M. Reidy and H. L. Underwood, both of Washington, D. C. (Daniel W. Knowlton, of Washington, D. C., of counsel), for defendant Interstate Commerce Commission.

E. H. Hatcher, of Topeka, Kan., and C. W. Steiger, of Eldorado, Kan., for intervening defendant Public Service Commission for State of Kansas.

C. A. Sorensen and Hugh La Master, both of Lincoln, Neb., for intervening defendant Nebraska State Railway Commission.

Harrison A. Bronson, of Grand Forks, N. D., for intervening defendant State of North Dakota.

Ralph Merriam, of Chicago, Ill., for intervening defendant Board of Trade of Kansas City, Mo.

D. D. McDonald, of Jefferson City, Mo., Francis Silver, of Helena, Mont., James Morris, of Bismarck, N. D., Paul A. Walker, of Oklahoma City, Okl., Herman L. Bode, of Pierre, S. D., and Clyde S. Bailey and John E. Benton, both of Washington, D. C., for intervening defendants Corporation Commission of Arizona, Public Utilities Commission of State of Colorado, Public Utilities Commission of State of Idaho, Public Service Commission of Missouri, Board of Railroad Commissioners of State of Montana, Public Service Commission of Nevada, New Mexico State Corporation Commission, Board of Railroad Commissioners of North Dakota, Corporation Commission of Oklahoma, Public Utility Commissioner of Oregon, Board of Railroad Commissioners of State of South Dakota, Public Service Commission of State of Wyoming, and Arkansas Railroad Commission.

George E. Q. Johnson, of Chicago, Ill., for the United States.

Before SPARKS, Circuit Judge, and LINDLEY and WOODWARD, District Judges.

LINDLEY, District Judge.

Plaintiffs, carriers in the Western district, seek to enjoin, pending final hearing of this cause, an order of the Interstate Commerce Commission entered July 1, 1930, and one of supplemental character entered April 10, 1931, in a proceeding, instituted by the Commission of its own motion, involving an investigation of the rate structure relating to grain and grain products within said district and for export. The proceedings were part of a general inquiry into and examination of the rate structure of all carriers subject to the Interstate Commerce Act (49 USCA § 1 et seq.), instituted in 1925 pursuant to the direction of Congress in the Hoch-Smith Resolution (43 Stat. 801). In the investigation there were consolidated with the branch here concerned various complaints and other proceedings involving related subjects.

In its report the Commission stated that the question presented is whether, "under present conditions, the rates on grain and grain products throughout the western district are reasonable and just and are properly related to each other and to the rates on other traffic. The answer must take into account not only comparisons of distance, transportation conditions, and ton-mile and car-mile earnings on grain and other commodities, but also whether the general level of rates on all traffic as a whole is sufficiently high to accord to the carriers the rate of return contemplated by law, including section 15a of the interstate commerce act, which we construe to permit, but not to guarantee, the carriers to earn 5.75 per cent on the fair value of the property devoted to the transportation service," and that the "record requires a general survey of the rates on grain and grain products throughout the western district from the standpoint not only of cost, but of general transportation conditions as well. The relation of rates, as well as the general level, is within the scope of the investigation."

The Commission found that the existing rates were unreasonable and in many respects preferential or prejudicial and that certain practices on the part of the carriers were improper and resulted in undue injury to the railroads and to other interested parties. Consequently it directed that the carriers desist from an enforcement of rates upon grain in excess of those therewith prescribed and from certain practices not in accord with the report and that they establish the prescribed rates on or before October 1, 1930, a date extended by the second order to June 1, 1931. Petitions for rehearing were denied. The present suit to set aside the orders followed, and we have presented now the motion for temporary injunction made therein.

We are not concerned with the wisdom or expediency of the order; nor may we substitute our judgment for that of the Commission. The latter is charged with the administrative duty of determining whether rates and practices are reasonable, prejudicial, or preferential, and its orders entered in such capacity are conclusive unless there is lack of substantial evidence to support them or unless they are beyond the scope of the Commission's power or invalid because of other error of law. Central R. R. Co. v. U. S., 257 U. S. 247, 42 S. Ct. 80, 66 L. Ed. 217; I. C. C. v. I. C. R. R., 215 U. S. 452, 30 S. Ct. 155, 54 L. Ed. 280; Skinner, etc., Corp. v. U. S., 249 U. S. 557, 39 S. Ct. 375, 63 L. Ed. 772; Assigned Car Cases, 274 U. S. 564, 47 S. Ct. 727, 71 L. Ed. 1204; U. S. v. New River Co., 265 U. S. 533, 44 S. Ct. 610, 68 L. Ed. 1165. In view of the absence of the evidence heard by the Commission, therefore, there is presented no question as to the sufficiency thereof to support the findings. Spiller v. A., T. & S. F. Ry. Co., 253 U. S. 117, 40 S. Ct. 466, 64 L. Ed. 810; La. & P. B. Ry. Co. v. U. S., 257 U. S. 114, 42 S. Ct. 25, 66 L. Ed. 156. There is left to our consideration only such legal questions as arise upon the face of the report, the order, and the pleadings herein.

Sections 1 (5) and 3 (1) of the Interstate Commerce Act, 49 USCA §§ 1(5), 3(1) direct that all transportation charges shall be reasonable and just, and forbid unjust, unreasonable, discriminatory, preferential, and prejudicial rates and practices and denominates them as unlawful. Section 15 (1), 49 USCA § 15(1) grants to the Commission power to determine whether any rates are unlawful in the sense of that word as used in sections 1 (5) and 3 (1); to determine what charges, classification, and practices will be fair, just, and reasonable; to order that carriers shall desist from unlawful charges; and to establish and enforce those found to be in accordance with the act.

Section 15a (2) and (3), 49 USCA § 15a (2, 3) provides that rates shall be such that the returns therefrom, under honest, efficient,

and economical management and maintenance, will be "as nearly as may be" a fair return upon the aggregate value of the property used in the service; that the Commission shall have reasonable latitude to modify any particular unjust or unreasonable rate; that it shall publish the percentage considered by it to furnish the aforesaid fair return; and that in such determination it shall give consideration, "among other things," to the transportation needs of the country and the necessity of enlarging carrier facilities to provide an adequate transportation. The percentage heretofore found to furnish the desired return is 5¾.

The Hoch-Smith Resolution (43 Stat. 801) directed the Commission to make a thorough investigation of the carriers' rate structure in order to determine whether then existing rates and practices were unlawful; to make, "in accordance with law," such changes and redistributions as found necessary to correct defects found to exist; to consider, in its proceedings, the comparative commodity market levels and the maintenance of an adequate system; from time to time as expeditiously as possible to make such decisions as it found appropriate upon the record then made and to effect "with the least practicable delay" such lawful charges as will promote the freedom of movement of farm products.

The Commission devoted 261 days to the hearing of the part of the general investigation here involved, considering testimony covering 53,000 pages and 2,100 exhibits. No part of that evidence is before the court. The Commission found that the average "present rates" on grain and grain products differ "not only in general territories but in different localities in the same general territory"; that such particular rates vary between a range of 57 to 149 per cent. of an accepted standard; that many rates are too low, others too high, and relative rates not in entire accord with transportation conditions; that horizontal treatment of existing rates would perpetuate these inconsistencies; and that some rates should be reduced, some increased, and some left unchanged.

The Commission found that the rates on grain and its products are unreasonable, unduly preferential, and prejudicial to the extent that they differ from the schedule ordered established; that transit practices are not uniform, but are unreasonable and preferential, result in discrimination, and should be restricted to two free stops; and that shippers should pay for additional stops at the rate of 2 cents per hundred pounds. Various specific findings as to transit conditions were included in the report. One of the Commissioners stated that the approximate cost of the present system of free transits to the railroads in the territory under consideration is $30,000,000 per year.

If we accept the statement of the Commission itself, it proceeded upon the assumption that by the resolution aforesaid it was its duty to undertake the tremendous task of reconsideration of the entire rate structure and traffic practice of the country, and with the aid of the parties compiled a record which presented a complete view of grain rates and traffic practices in relation thereto in the Western district, which supplied the facts necessary to an intelligent consideration and revision thereof. Without discussing the many details of the report, it seems obvious from our examination of same that the Commission was attempting to exercise its administrative functions in good faith under the law, upon voluminous evidence submitted. And, as suggested, in the absence of such evidence, we must assume that it was sufficient to sustain the finding that rates upon grain and grain products are unjust and unreasonable and traffic practices in relation thereto preferential and discriminatory.

The report includes a finding that plaintiffs are not earning the percentage heretofore published as sufficient to sustain an adequate transportation. Instead of 5¾ per cent., the carriers in the Western district have earned since 1921 not more than 4.45 per cent. (as in 1926) and as little as 3.12 per cent. (as in 1921). The earning for 1927 was 3.92 per cent. In a recent report the Commission remarked that "the railroads have never been able, since 1920, to obtain the aggregate earnings contemplated by section 15a, and they are faced with continually increasing competition from other forms of transportation."

Plaintiffs contend that the Commission is without jurisdiction to establish rates upon grain which it claims will deprive it of many millions of dollars in revenue when the return of 5¾ per cent. is not being earned; that section 15a puts upon the Commission the duty of initiating such rates as "will, as nearly as may be" earn such return; that "will" implies not mere permission but insures, "so far as possible, without direct guaranty," the statutory fair return; and that the Commission treated the statutory provisions as granting to it mere permission, and thereby committed error in failing to follow the legislative mandate.

Even though we were to accept the proposition that the purpose of the statute was to furnish, so far as possible, an insurance of such rates as will furnish the statutory return, we would still be confronted with the fact· that though the Commission discussed and considered that the return is below what it believed to be a fair one, yet, in view of other evidence, it found the particular rates and practices unreasonable, preferential, and prejudicial; that it was dealing with only one branch of the rate structure; and that it arrived at its conclusion as to ·the specific rates and practices involved after its stated consideration of all evidence bearing upon the questions affecting the rates. We are therefore without right to conclude that the Commission deliberately ignored the subject of adequate return. We must assume that the evidence as a whole was sufficient to sustain the finding.

■ Plaintiff's contention in effect is that the Commission is without power to modify existing particular rates, admittedly not producing a fair return, so as to warrant a reduction in revenue. We do not so construe the act. Though upon a nation-wide revision of rate structure as to all commodities the law may wisely and properly require that such structure must be so built in all its details as eventually to furnish a fair return, i. e., such a return as will support an adequate transportation system, it does not follow in our opinion, that, in a proceeding involving the rate structure of only certain commodities, the Commission may not reduce such rates on such commodities as it finds to be unlawful, even though the present return is not a fair one. Section 15a (2) seems to warrant such action as to particular rates, assuming always that the evidence supports the finding of unlawfulness, and the Supreme Court seems so to hold.

Thus in Dayton-Goose Creek Ry. Co. v. U. S., 263 U. S. 456, 44 S. Ct. 169, 173, 68 L. Ed. 388, 33 A. L. R. 472:

"The statute does not require that the net return from all the·rates shall affect the reasonableness of a particular rate or a class of rates. In such an inquiry, the Commission may have regard to the service done, its intrinsic cost, or a comparison of it with other rates, and need not consider the total net return at all. Paragraph 17 of section 15a makes this clear. * * * Where the reasonableness of one rate or a class of rates is in issue, the total operating profit of the railroad or public utility is of little use in reaching a conclusion. This is shown by the words of Mr. Justice Lamar, speaking for the court, in Interstate Commerce Commission v. Union Pacific R. R. Co. (page 549 of 222 U. S., 32 S. Ct. 108, 111, 56 L. Ed. 308):

" 'Where the rates as a whole are under consideration, there is a possibility of deciding, with more or less certainty, whether the total earnings afford a reasonable return. But whether the carrier earned dividends or not sheds little light on the question as to whether the rate on a particular article is reasonable. For, if the carrier's total income enables it to declare a dividend, that would not justify an order requiring it to haul one class of goods for nothing, or for less than a reasonable rate. On the other hand, if the carrier earned no dividend, it would not have warranted an order fixing an unreasonably high rate on such article.' "

If this language be obiter dictum, as insisted by plaintiffs, we shall leave announcement to that effect to the Supreme Court.

Plaintiffs assert that in reaching its conclusions the Commission was guided by standards other than those of the law, in other words, by the provisions of the Hoch-Smith Resolution of Congress (43 Stat. 801), which directed the Commission, in view of the agricultural depression, to effect such changes in the rate structure as will promote freedom of movement of farm products at the lowest possible rate compatible with the maintenance of adequate transportation service. It is plaintiff's theory that the Commission construed the resolution as placing agricultural products in a "most favored" class and justifying reduction of rates thereon, even though the same were already reasonable, and as requiring it to set up a zone of reasonableness and to establish such rates at the lowest possible point of said zone.

■ Were we able to conclude from what is before us that the plaintiffs are correct in assuming that the Commission adopted a standard other than that created by law, we would necessarily be impelled to enjoin the order, for no mandate of the Commission based upon a mistake of law or founded upon standards other than those of the Interstate Commerce law can be allowed to stand. I. C. C. v. N. P. R. R. Co., 222 U. S. 541, 32 S. Ct. 108, 56 L. Ed. 308; I. C. C. v. I. C. R. R. Co., 215 U. S. 452, 30 S. Ct. 155, 54 L. Ed. 280. And in Ann Arbor R. R. Co. v. U. S., 281 U. S. 658, 50 S. Ct. 444, 446, 74 L. Ed. 1098, the Supreme Court pointed out that the resolution "does not purport to make any change in the existing law, but on the contrary requires that that law be given effect. Nor

does it purport to make unlawful any rate which under the existing law is a lawful rate, but on the contrary leaves the validity of the rate to be tested by that law." In that case the court found that the Commission had by its construction, been led astray and guided by an improper construction of the resolution and set aside the order.

But we find here no evidence that the Commission was so misled. The case last cited was decided prior to the entry of the order, and the Commission said concerning the same: "The Supreme Court of the United States recently interpreted the Hoch-Smith resolution as setting up no standard of reasonableness of rate level or relation other than that already provided by the interstate commerce act. Ann Arbor Railroad Company v. United States, 281 U. S. 658 [50 S. Ct. 444, 74 L. Ed. 1098], decided June 2, 1930. The findings herein are under the provisions of the interstate commerce act." This language, adopted unanimously by the eleven members, is definite notice to the parties that the Commission had no misconception as to its duty; that, if it made any mistake, such was one of fact, with which we are not concerned.

■ Plaintiffs contend further that the language of the concurring opinions of certain members of the Commission clearly sustain its contention that the order was based upon the Hoch-Smith resolution in a manner condemned by the Supreme Court in the Ann Arbor Case. We do not understand that the utterance of individual members in a separate opinion can be utilized to invalidate the report of the Commission but that such separate statements may be read in connection with the expressions of the report and its expressed or tacit admissions, in order to determine to just what the Commission gave consideration. But here we are met with the unconditional statement in the report that the Commission had in contemplation the holding of the Supreme Court in the Ann Arbor Case and that it was following the teaching thereof by making its findings under the law instead of under any alleged wrongful standard of the resolution. Furthermore, this statement, adopted by the complete Commission, is effective refutation of plaintiffs' contention that certain individual members' statements, alleged to be indicative of a desire to adopt a standard other than the lawful one, went unchallenged.

When we consider the expressions of the concurring commissioners, we find no convincing evidence therein that the members put upon the Hoch-Smith Resolution any construction other than that held by the Supreme Court to be authorized. When one of them said that the presented rates "lie within the zone of reasonableness but are the lowest rates on this traffic which can be lawfully presented," we conclude only that he evidently believed that the rates were "lawfully" prescribed as defined in the Ann Arbor Case, and that his "zone of reasonableness" must have been that mentioned by the Supreme Court in Am. Express Co. v. S. D., 244 U. S. 617, 37 S. Ct. 656, 660, 61 L. Ed. 1352, where, in discussing two rates, it said: "Both rates may lie within the zone of reasonableness and yet involve unjust discrimination." The statement of another Commissioner construed by plaintiffs to mean that in voting for the prescribed rates, he sought "to relieve the condition of agriculture," cannot in the face of the report be interpreted as intimating that he meant other than legal relief. Nor do we find convincing evidence in the other concurring opinions that the Commission or its individual members did not, as they state in the report, make their findings in pursuance of and in compliance with the Interstate Commerce Law.

■■ It is contended that the finding which the report contains that the present rates are unreasonable to the extent that they exceed those prescribed is not sufficient to support the order. If we were able to determine satisfactorily to ourselves that the Commission deemed the rates unreasonable under the joint resolution, but not under the provisions of the Interstate Commerce Act, as the Supreme Court found the case to be in Ann Arbor R. R. Co. v. U. S., 281 U. S. 658, 50 S. Ct. 444, 74 L. Ed. 1098, we would necessarily be impelled to enjoin the order, for, as determined by the decision last mentioned, the Commission may not, in determining the reasonableness or unreasonableness of any rate, "entertain considerations not applicable under those sections 1 (5) and 3 (1) but believed by it to have been brought into the problem by the resolution." But, in the absence of the record and an opportunity to examine the evidence before the Commission, we are without power, in the absence of convincing evidence in the report itself, to say that the order was based upon the application of standards other than those established by the Interstate Commerce Act or upon a misconception of the Commission's powers and duties. Despite the argument of counsel that it is apparent from the face of the report that the Commission followed instruction of the reso-

lution instead of that of the law, an examination of the report is not convincing of such conclusion. Nor can we ignore the direct statement of the Commission that "the findings herein are under the provisions of the interstate commerce act." We are controlled in this connection by the amendment to section 14 in 1906 (Hepburn Act [49 USCA § 14]) dispensing "with the necessity of formal findings of fact except in cases where damages (or reparation) are awarded." Mfrs. Ry. Co. v. U. S., 246 U. S. 457, 38 S. Ct. 383, 392, 62 L. Ed. 831.

 Complaint is made that almost two years intervened between the date of closing evidence and that of entry of the order, that the record had become stale and conditions changed for the worse for the carriers, and that it was therefore error of law for the Commission to deny petitions for rehearing setting up said changed conditions. Orders prescribing rates do not constitute rei adjudicata. The Commission's administrative duty under the law in establishing reasonable rates and effecting desistance from unreasonable rates and practices is a never ending one, and to that administrative body the carriers may at any time appeal for relief from harsh situations. The accumulation and consideration of 53,000 pages of testimony and the preparation of conclusions thereon is a gigantic task and one requiring much time. Quite naturally, conditions change during any such period. The world and its myriads of affairs are never the same two days in succession; the history of to-day always differs from that of yesterday. If the Commission has no discretion to deny petitions for rehearing because of changed conditions, it would never arrive at a time when it might enter a lawful order. But the Commission has a discretion in the premises and even though we might believe it would have been wiser in the present case to have granted a rehearing, we have no right to substitute our judgment in that respect for that of the statutory body. Nor, in view of the character of rate orders and the nature of the Commission's duties, do we find any evidence of arbitrary abuse of discretion. The order is not res adjudicata, and the carriers have a right to relief whenever they can show that they are being unlawfully damaged. What may be the practical result of the new schedule, what the result of the general investigation of the universal rate schedule may be, whether, after completion of the Commission's tremendous task, the return to which the carriers are presumptively entitled may be realized or not,

are questions for the future. If the answers are not satisfactory, the interested parties may appeal to the Commission and to the courts.

From what we have said and the findings of fact adopted, it follows that we do not deem the showing sufficient to warrant the allowance of the motion. Intervening petitions were filed herein, and certain other causes have been consolidated herewith, but nothing suggested as to the questions involved therein is sufficient to warrant interference with the Commission's order by us.

The motion for a temporary injunction will be denied and the temporary restraining order heretofore entered dissolved.