# CAROLINA FREIGHT CARRIERS CORPORATION v. UNITED STATES et al.

District Court, W. D. North Carolina.

April 5, 1941.

550

Wilmer A. Hill, of Washington, D. C., and R. G. Cherry, of Gastonia, N. C., for plaintiff.

Frank Coleman, Sp. Asst. to Atty. Gen., Theron L. Caudle, U. S. Atty., of Wadesboro, N. C., and Nelson Thomas, of Washington, D. C., Atty. for Interstate Commerce Commission (Thurman Arnold, Asst. Atty. Gen., and Daniel W. Knowlton, Chief Counsel Interstate Commerce Commission, of Washington, D. C., of counsel), for defendants.

Harry F. Gillis, of Washington, D. C., and Nuel D. Belnap and Robert N. Burchmore, both of Chicago, Ill., for Irregular Common Carriers Ass'n of America, amicus curiae.

Before PARKER and DOBIE, Circuit Judges, and WEBB, District Judge.

PARKER, Circuit Judge.

This is a suit under 28 U.S.C.A. § 41(28) to enjoin and set aside an order of the Interstate Commerce Commission made upon ..n application for a certificate of public convenience and necessity under the "grandfather" clause of section 206(a) of the Motor Carrier Act of 1935, 49 U.S.C.A. § 306(a). See 24 M.C.C. 305. Interlocutory injunction has been applied for and a special statutory court of three judges has been convened pursuant to section 47 of Title 28 of the United States Code Annotated. At the hearing upon the application for interlocutory injunction, the evidence heard before the Commission has been introduced and the case has been submitted for final decree.

Plaintiff with its predecessor Mauney Transfer Company, Inc., has been operating as a common carrier of freight by irregular routes since 1931. The evidence, which is uncontradicted, shows beyond question that it was holding itself out as a common carrier and accepting for transportation all such commodities as it could obtain, other than those for which special equipment was required. As it was operating in the heart of the textile center of the Carolinas, a large part of its northbound traffic consisted of textile products of various kinds, although the evidence shows that it also obtained for transportation and transported northward asbestos products, rubber tires and various other commodities. Its southbound traffic consisted of whatever it could pick up by its own efforts or through the solicitation of freight brokers with whom it did business. The Commission found "that prior to June 1, 1935, southbound shipments consisted of a variety of commodities destined to a few points in Virginia and South Carolina and to points scattered throughout North Carolina". An examination of the record shows that among the articles transported prior to June 1, 1935, were cotton yarn, yarn tubing, warp beams, cones, skeins, cotton bed-spreads, petroleum products, canned goods, medicine, batteries, linoleum rugs, paper, brazil nuts, rayon, machinery, roofing, wire, nails, screen cloth, enamelware, electrical supplies, plumbing supplies, tires, asbestos products, cocoa, general hardware, chemicals, beer, paper containers, cotton fabric, spools, empty barrels and boxes, and cotton piece goods. The territory over which the operations of plaintiff were conducted was, roughly speaking, the territory lying along the Atlantic Seaboard between the Carolinas and New York and New England. On June 1, 1935, plaintiff or its predecessor in interest, was operating six or eight trucks within this territory.

By application filed January 24, 1936, the Mauney Transfer Company, predecessor of plaintiff, sought under the "grandfather clause" of section 206(a) of the Motor Carrier Act a certificate of public convenience and necessity, authorizing operation as a common carrier by motor vehicle, in interstate or foreign commerce, of general commodities (excepting commodities of unusual value, those in bulk, those requiring special equipment etc.) between all points in South Carolina, North Carolina, Delaware, New Jersey, Connecticut, Rhode Island, and Massachusetts, and those in Virginia east of and including the Shenandoah Valley, those in Maryland and Pennsylvania on and east of U. S. Highway 11, and those in New York east of Binghamton and south of Albany, over irregular routes, and between Cherryville and Boston, Mass., over a regular route through Henderson, N. C., Richmond, Va., Baltimore, Md., Philadelphia, Pa., and New York, N. Y.

The Commission granted a certificate to plaintiff but limited it both as to points of operation and commodities, allowing operation only with respect to commodities shown to have been transported by plaintiff prior to June 1, 1935, and only between the points where the transportation of such commodities between the same points was shown subsequent to June 1, 1935. The basis of this decision of the Commission was set forth in its report as follows:

"We have frequently stated that authority to transport general commodities throughout a wide territory, over irregular and unspecified routes, pursuant to the 'grandfather' clauses of the act should be granted to a carrier only when such carrier's right thereto has been proved by substantial evidence. To do otherwise would create the very ills which regulation is designed to alleviate, namely, congestion of highways, destructive rate practices, and

552

unbridled competition. Common carriers which are expected to maintain regular service for the movement of freight in whatever quantity offered, to and from all points on a specified route, cannot operate economically and efficiently if other carriers are permitted to invade such routes for the sole purpose of handling the cream of the traffic available thereon in so-called irregular-route service. On the basis of all the evidence, it is clear that no substantial showing of service has been made to establish bona fide irregular-route operations in the transportation of general commodities from and to all points in the States included in the application.

"Applicant also contends that a carrier who has filed an application under the 'grandfather' clause of section 206(a) of the act may not be restricted to the transportation of the commodities carried on June 1, 1935. Section 203(a) (14) of the act contemplates that a common carrier may transport only a 'class or classes of property,' and we have found in numerous cases that the authority issued under the 'grandfather' clauses of sections 206(a) and 209(a) of the act should reflect any limitation in the undertaking of common or contract carriers as indicated by the service actually rendered on and since the statutory dates."

The finding and decision of the Commission upon which the limitation of the order, complained of by plaintiff, is based is as follows:

"We find that applicant's predecessor in interest was on June 1, 1935, and continuously since it and its predecessor have been, in bona fide operation as a common carrier by motor vehicle, in interstate or foreign commerce (1) of cotton yarn from all points in Gaston, Lincoln, Cleveland, Rutherford, McDowell, Burke, Catawba, Alexander, Iredell, Rowan, Davidson, and Davie Counties, N. C., to Hagerstown, Md., New York, N. Y., Pawtucket and Providence, R. I., all points in Pennsylvania on and east of U. S. Highway 11, and points in Middlesex, Union, Essex, Hudson, Passaic, Bergen, Somerset, and Morris Counties, N. J., (2) of asbestos textile products from Charlotte, N. C., to Philadelphia and North Wales, Pa., Trenton, Newark, Passaic, and Paterson, N. J., New York, N. Y., Middletown, Conn., Providence and Pawtucket, R. I., and Boston and Hudson, Mass., (3) of supplies and materials used in the

manufacture of asbestos textile products from Harrison and Perth Amboy, N. J., to Charlotte, N. C., and empty spools and boxes in the reverse direction, (4) of petroleum products in containers from Sewaren, N. J., and Marcus Hook, Pa., to Columbia and Greenville, S. C., and to all points in North Carolina, (5) of linoleum from Paulsboro, N. J., Marcus Hook, Pa., and East Walpole, Mass., to points in North Carolina and to Spartanburg and Greenville, S. C., (6) of canned goods from Baltimore, Md., to Shelby, N. C., (7) of beer and ale from Newark, N. J., to Gastonia and Wadesboro, N. C., and (8) of roofing and screen wire from York, Pa., to all points in North Carolina, all over irregular routes; that applicant is entitled to a certificate authorizing continuation of such operation; and that the application in all other respects should be denied."

█ Plaintiff says that the effect of thus limiting the order will be to put it out of business; and it is manifest that this must be true since it is hardly conceivable that a trucking company could do business if allowed to carry loads in only one direction, and the limitations imposed by the order will render it practically impossible for the trucks of plaintiff to obtain freight when returning South. It is the contention of plaintiff that the limitations are unreasonable and are not authorized by law; and certain it is that they amount to a reductio ad absurdum of the position taken by the Commission in this and a number of other cases to the effect that classification justifies limitation of "grandfather" certificates to specific commodities shown to have been transported between specific points. As pointed out in the brief of the Amicus Curiae:

"With northbound authorities so limited, applicant would be permitted to transport cotton yarn to many destinations and territories to which it would be denied the right to transport on the same trip asbestos textile products, and correspondingly would be permitted to handle asbestos textile products to Boston and Hudson, Mass., although on the same trip it would not be permitted to haul cotton yarn. Incidentally, in summarizing the proof, the Commission found as a fact as to cotton yarn that ten Massachusetts points were served prior to June 1, 1935, and as to asbestos textile products that services were required by the shipper to all points in a number of northern states.

\* \* \* \* \* \*

· "Considering only the southbound, plaintiff can go with petroleum products from Marcus Hook, Pa., to Columbia, S. C., but not with linoleum, and in contrast he can go with linoleum from Marcus Hook, Pa., to Spartanburg, S. C., but not with petroleum products. He can go with either of these commodities from two specified origins to any destination in North Carolina, but when it comes to canned goods, which he is authorized to carry from Baltimore, he must confine his deliveries to Shelby in that state, and when he goes with beer and ale from Newark, N. J., he must confine his deliveries to Gastonia and Wadesboro. Even then, while he is authorized to originate beer and ale at New Jersey for delivery at the points just named, he is not permitted to handle that commodity if originated at Baltimore, although he is allowed to pick up canned goods at the latter point.

"The plaintiff is authorized to deliver cotton yarn at specified points in Maryland, New York, and Rhode Island, at all points in eastern Pennsylvania, and eight counties of northern New Jersey, but he is prohibited from obtaining any of the commodities which he is authorized to transport southbound unless he goes to Harrison or Perth Amboy, N. J., for supplies and materials; to Sewaren, N. J., or Marcus Hook, Pa., for petroleum; to Paulsboro, N. J., Marcus Hook, Pa., or East Walpole, Mass., for linoleum; to Baltimore for canned goods, to Newark, N. J., for beer and ale; or to York, Pa., for roofing and screen wire."

■ We think it perfectly clear that no such result was contemplated by Congress in the passage of the Transportation Act. On the contrary, the clear meaning of the language used in the act is that common carriers in business at the time of its passage and since, should be allowed to continue in business as common carriers in the same territory without proof of public convenience and necessity. Section 206(a) of the Act, 49 U.S.C.A. § 306(a), provides:

"Except as otherwise provided in this section and in section 310a, no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations:

Provided, however, That, subject to section 310, if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, or if engaged in furnishing seasonal service only, was in bona fide operation on June 1, 1935, during the season ordinarily covered by its operation, except in either instance as to interruptions of service over which the applicant or its predecessor in interest had no control, the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, * * *."

■ There is nothing in this language or in the reason and spirit of the act which justifies the limiting of certificates granted common carriers under the grandfather clause to the precise commodities which they have theretofore hauled or in the case of carriers by irregular routes to the precise points that they have served in the territory over which they have operated. It is well settled that "a common carrier is one who undertakes, for hire or reward, to transport the goods of such as choose to employ him from place to place". Dwight v. Brewster, 1 Pick., Mass., 50, 53, 11 Am. Dec. 133; Dobie on Bailments and Carriers, § 107; Hutchinson on Carriers, 3d ed. sec. 47. We agree, of course, that a mere holding out by a common carrier is not enough to bring him within the protection of the "grandfather" clause. The statute provides that he must have been in bona fide operation as a common carrier within the territory; and this bona fide operation means, we think, that he must have done such a substantial volume of business within the territory that he could reasonably be said to be operating therein as a common carrier. But there is nothing in the act which justifies the Commission in saying that because a common carrier who was operating as a general carrier of package freight did not haul rubber tires prior to 1935 he is not to be permitted to haul them in 1940, or that because he did not haul canned goods to Charlotte prior to 1935, although hauling them to Shelby in the same territory, he should not be permitted to haul them to Charlotte thereafter.

■ The Commission seeks to justify the limitation here imposed under the definition of common carrier contained in section 203(a) (14), 49 U.S.C.A. § 303(a)

(14), which provides: "The term 'common carrier by motor vehicle' means any person who or which undertakes, whether directly or by a lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public in interstate or foreign commerce by motor vehicle for compensation, whether over regular or irregular routes, including such motor vehicle operations of carriers by rail or water, and of express or forwarding companies, except to the extent that these operations are subject to the provisions of chapter 1 of this title."

It is perfectly clear, however, that no authority for such limitation can be found in this definition. On the contrary, the effect of the language used is merely to make clear that "specialty haulers", i.e. those who transport any special class or classes of property, are to be deemed common carriers, as well as those who transport property generally. And we think it significant that in making classifications of carriers for the proper performance of its duties, the Commission has not attempted to classify with respect to points served or specific commodities hauled, but has defined its seventeen classes of carriers on the basis of the general business engaged in. The classification is as follows: (1) carriers of general freight, (2) carriers of household goods, (3) carriers of heavy machinery, (4) carriers of liquid petroleum products, (5) carriers of refrigerated liquid products, (6) carriers of refrigerated solid products, (7) carriers engaged in dump trucking, (8) carriers of agricultural commodities, (9) carriers of motor vehicles, (10) carriers engaged in armored-truck service, (11) carriers of building materials, (12) carriers of films and associated commodities, (13) carriers of forest products, (14) carriers of mine ores, not including coal, (15) carriers engaged in retail-store delivery service, (16) carriers of explosives or dangerous articles, (17) carriers of specific commodities, not subgrouped. Ex Parte No. M.C.10, Classification of Motor Carriers of Property, 2 M.C.C. 703, 706. Under this classification, plaintiff should manifestly be classified as a carrier of general freight, since it was willing to haul any freight that it was offered, outside of the specialties requiring specialized equipment, and did substantial business of this character. Being a common carrier of general freight during the "grandfather" period, it became entitled to a certificate on the same basis; and we see nothing in any language of the act which justifies the Commission in limiting the certificate to the points served and the specific commodities transported. "Grandfather" clauses are quite customary when the state first undertakes the regulation of an industry or profession; and so far as we are advised the position taken by the Commission with respect to these cases is quite without precedent. It is just as though a physician entitled to continue his practice under the grandfather' clause of a statute regulating the practice of medicine should be told that he could practice only in the homes which he had formerly visited in his practice and would be allowed to treat only the diseases which he had formerly treated. We feel perfectly sure that if any such interpretation of the act had been suggested at the time of its consideration by Congress, it never would have been passed.

It is argued that the position of the Commission here has been approved by the Supreme Court in Loving v. United States, 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387, affirming, D.C., 32 F.Supp. 464, and see 12 M.C.C. 571. We do not think so. The Loving case presented the situation of an applicant whose holding out over a large territory was not supported by any substantial transportation; and the cases cited by the Supreme Court in its per curiam opinion sustain no such radical limitation of the meaning of the statute as is here proposed by the Commission. McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L. Ed. 164, held merely that bona fide operation was a prerequisite to obtaining a certificate under the "grandfather" clause of 206(a) of the statute and that operation in violation of a state statute was not such bona fide operation. United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 771, 83 L. Ed. 1162, held merely that certificate for route between fixed termini was not supported by proof of operation within the grandfather period of "anywhere-for-hire" service which was abandoned when the new route was instituted, and that the Commission finding on controverted matters of fact was binding. The other cases cited are pertinent merely with respect to the point last mentioned. We do not think that the Loving decision can reasonably be construed as an approval by the Supreme Court of the position taken by the Commission here, viz., that notwithstanding that a common carrier may have done sub-

stantial business pursuant to his holding out as a carrier of general package freight during the grandfather period, he is not to be granted a certificate for the territory served commensurate with his holding out and the business done pursuant thereto, but is to be limited just as though he had limited himself to the hauling of the special commodities received pursuant to his holding out and to the points to which these commodities happened to be hauled in the territory. The order of the Commission here under review not only so limits the certificate but further limits it to the points and commodities to which plaintiff's transportation extended both before and after the crucial date of June 1, 1935.

We have considered the case of Eastern Carrier Corp. v. United States, D.C., 31 F.Supp. 232, 238, upon which counsel for the Commission rely; but that was a case involving transportation found to have been "more or less sporadic". The learned Senior Circuit Judge of the Third Circuit laid down in that case, however, the rule which we think applicable here, as follows: "If the plaintiff's predecessor was engaged in the bona fide transportation of merchandise generally at the grandfather date and this transportation was carried on by the plaintiff thereafter, a certificate of public convenience and necessity to continue that transportation should have been granted by the Commission."

It is argued that the interpretation placed by the Commission on the act has received the approval of Congress because in the Transportation Act of 1940, 49 U.S.C.A. § 301 et seq., Congress did not legislate with regard thereto. It is to be noted, however, that section 203(a) (14) of the Act of 1935, being the very section upon which the Commission relies for its interpretation, was amended so that a common carrier is now defined in terms of holding out. Quite apart from this, however, the interpretation placed upon the act has by no means been so uniform as to justify the conclusion that Congress could be deemed to have legislated with regard thereto. George Cassens Sons Common Carrier Application, 1 M.C.C. 771; Slagle Contract Carrier Application, 2 M.C.C. 127; Dixie Ohio Exp. Co. Common Carrier Application, 17 M.C.C. 735, 744, 745. And the rule is well settled that administrative practice or interpretation has no weight where, as here, the language of the statute is unambiguous and such practice or interpretation is unreasonable and clearly inconsistent with it. Helvering v. Safe Deposit & Trust Co., 4 Cir., 95 F.2d 806, 811; Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528.

It is, of course, reasonable to limit the certificate to the type of service rendered by the carrier during the grandfather period, and to limit the territory to that within which substantial service of that type has been rendered; but it is unreasonable to limit the certificate of one who has functioned as a general carrier to the specific commodities carried and the specific points served. The law cannot reasonably be construed as authorizing such limitation. Nor can it be justified on the ground that it is based upon a finding of fact by the Commission. In the first place, a finding that the carrier here limited itself to the precise commodities transported and the precise points served is not supported by any evidence; and a finding that a general carrier of package freight should be held to be limited in his service to the precise commodities that he is able to obtain, when he is holding himself out as a general carrier, is so arbitrary and unreasonable as to transcend the Commission's power. Anchor Coal Co. v. United States, D. C., 25 F.2d 462, 471; Southern Pacific Co. v. I. C. C., 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283; I. C. C. v. Union Pacific Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; United States v. New York C. R. R., 263 U.S. 603, 44 S.Ct. 212, 68 L.Ed. 470; United States v. New River Co., 265 U.S. 533, 540, 44 S.Ct. 610, 68 L.Ed. 1165. In the second place, nothing in the act warrants the limitation of the certificate of a general carrier upon such a finding.

There is another ground upon which the order of the Commission must be held invalid. The limitation which it imposes with respect to irregular route carriers is not imposed with respect to carriers on regular routes and is admittedly imposed by it for the protection of regular route carriers. The Commission so states in the portion of its opinion quoted above, wherein the Commission said: "Common carriers which are expected to maintain regular service for the movement of freight in whatever quantity offered, to and from all points on a specified route, cannot operate economically and efficiently if other carriers are permitted to invade such routes for the sole purpose of handling the cream

of the traffic available thereon in so-called irregular-route service." But Congress has made no such distinction between common carriers by regular and those by irregular routes; and, for the Commission to make such distinction is to add to the act of Congress in favor of one class of carriers and against another. This the Commission cannot do. Ann Arbor R. Co. v. United States, 281 U.S. 658, 50 S.Ct. 444, 74 L.Ed. 1098; Anchor Coal Co. v. United States, D.C., 25 F.2d 462.

For the reasons stated, the order of the Commission will be set aside (Rochester Tel. Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147), and the cause will be remanded to the end that the Commission may pass upon the application of plaintiff in the light of the principles herein set forth. Federal Communications Comm. v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656. This does not mean that plaintiff is necessarily entitled to the certificate applied for, but that the Commission should pass upon the application in the light of the principles here laid down, and without the limitations which we have condemned, and grant to plaintiff a certificate covering the territory in which it finds that plaintiff carried on substantial operations as a common carrier during the grandfather period and has since carried on same.

Order set aside.